ACCEPTED
01-14-00997-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/25/2015 4:37:34 PM
CHRISTOPHER PRINI
CLERK

No. 01–14–00997–CV

In the First Court of Appeals
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/25/2015 4:37:34 PM
CHRISTOPHER A. PRINE
Clerk

Perry D. Felix d/b/a Han's Laser Technology Co., Appellant

v.

Prosperity Bank, Appellee

From the 164th District Court, Harris County, Texas
Cause No. 2013–50191

PROSPERITY BANK'S CROSS–APPELLANT'S BRIEF

Hirsch & Westheimer, P.C.

Michael D. Conner
State Bar No. 04688650
mconner@hirschwest.com
William "Pat" Huttenbach
State Bar No. 24002330
phuttenbach@hirschwest.com
Jacob M. Stephens
State Bar No. 24066143
jstephens@hirschwest.com
1415 Louisiana, 36th Floor
Houston, Texas 77002
Telephone: (713) 220–9162
Facsimile:  (713) 223–9319

ATTORNEYS FOR
APPELLEE/CROSS–APPELLANT,
PROSPERITY BANK

20090252.20140460/2125761.1

## IDENTITY OF PARTIES AND COUNSEL

| Appellant: | Attorneys: |
|---|---|
| Perry D. Felix d/b/a Han's Laser Technology Co. | J. Steven Stewart<br>State Bar No: 19210500<br>jss@jstevenstewart.com<br>5353 West Alabama, Suite 605<br>Houston, Texas 77056<br>Telephone: (713) 977–3447<br>Fax: (832) 201– 9117 |

| Appellee/Cross–Appellant: | Attorneys: |
|---|---|
| Prosperity Bank | Michael D. Conner<br>State Bar No. 04688650<br>mconner@hirschwest.com<br>William "Pat" Huttenbach<br>State Bar No. 24002330<br>phuttenbach@hirschwest.com<br>Jacob M. Stephens<br>State Bar No. 24066143<br>jstephens@hirschwest.com<br>1415 Louisiana, 36th Floor<br>Houston, Texas 77002<br>Telephone: (713) 220–9162<br>Facsimile:  (713) 223–9319 |

20090252.20140460/2125761.1

# TABLE OF CONTENTS

Identity of Parties and Counsel ........................................................................ i

Table of Contents............................................................................................. ii

Table of Authorities ....................................................................................... iv

Statement of the Case ...................................................................................... 1

Cross Issue Presented ...................................................................................... 2

    The trial court erred by failing to award attorneys' fees to Prosperity for Felix's breach of the written deposit agreement. ............ 2

Preliminary Statement ...................................................................................... 2

Statement of Facts Pertinent to Prosperity's Cross Issue .............................. 2

Summary of the Argument ............................................................................... 6

Argument & Authorities & Standard of Review............................................. 7

    Standard of Review ............................................................................... 7

    Felix failed to comply with the written agreement............................... 8

    The deposit agreement is treated like any contract.............................. 9

    Attorneys' fees are recoverable. .........................................................10

    Prosperity is entitled to its fees under Chapter 38...............................12

    Prosperity complied with Chapter 38..................................................13

    Prosperity conclusively proved its fees................................................14

20090252.20140460/2125761.1

Conclusion & Prayer ................................................................................16

Certificate of Compliance ........................................................................17

Certificate of Service ...............................................................................17

Appendix .................................................................................................18

20090252.20140460/2125761.1

Cases

*1/2 Price Checks Cashed v. United Auto. Ins. Co.,*
  344 S.W.3d 378 (Tex. 2011)...............................................................12

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v.*
  *Nat'l Dev. & Research Corp.,*
  299 S.W.3d 106 (Tex. 2009)..............................................................11

*Albataineh v. Eshtehardi,* 2013 WL 1858864
  (Tex. App.–Houston [1st Dist.] May 2, 2013, no pet.)..........................12

*Anderson v. McCormick,*
  2013 WL 5884931
  (Tex. App.–Houston [1st Dist.] Oct. 31, 2013, no pet.) ........................15

*Berg v. Wilson,*
  353 S.W.3d 166 (Tex. App.–Texarkana 2011, pet. denied)...................13

*Bocquet v. Herring,*
  972 S.W.2d 19 (Tex. 1998)................................................................15

*Boyaki v. John M. O'Quinn & Associates, PLLC,*
  2014 WL 4855021
  (Tex. App.–Houston [1st Dist.] Sept. 30, 2014, pet. filed) .............. 12, 13

*Brainard v. Trinity Universal Ins. Co.,*
  216 S.W.3d 809 (Tex. 2006)..............................................................14

*Buckhannon Bd. & Care Home, Inc. v.*
  *W. Va. Dep't of Health and Human, Res.,*
  532 U.S. 598, 121 S. Ct. 1835, 149 L.Ed.2d 855 (2001).......................10

*Flavor Finish Resurfacing, L.L.C. v. Ellerkamp,*
  2012 WL 3776345
  (Tex. App.–Houston [1st Dist.] Aug. 30, 2012, no pet.) .........................9

20090252.20140460/2125761.1

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
  386 U.S. 714, 87 S. Ct. 1404, 18 L.Ed.2d 475 (1967) ...........................10

*G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.,*
  177 S.W.3d 537 (Tex. App.–Dallas 2005, no pet.) ...............................10

*Helping Hands Home Care, Inc. v. Home Health of Tarrant County, Inc.,*
  393 S.W.3d 492 (Tex. App.–Dallas 2013, pet. denied) .........................11

*Honeycutt v. Billingsley*,
  992 S.W.2d 570 (Tex. App.–Houston [1st Dist.] 1999, pet. denied.......14

*Jim Maddox Properties, LLC v. WEM Equity Capital Investments, Ltd.*,
  446 S.W.3d 126 (Tex. App.–Houston [1st Dist.] 2014, no pet.)..............7

*Lofton v. Texas Brine Corp.*,
  777 S.W.2d 384 (Tex.1989).................................................................14

*M.D. Anderson Hosp. & Tumor Inst. v. Willrich,*
  28 S.W.3d 22 (Tex. 2000) ....................................................................8

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,*
  289 S.W.3d 844 (Tex.2009)..................................................................7

*Pala v. Maxim*,
  2002 WL 188567
  (Tex. App.–Houston [1st Dist.] Feb. 7, 2002, no pet.) .........................15

*Rasmusson v. LBC PetroUnited, Inc.,*
  124 S.W.3d 283 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) ...12

*Rayon v. Energy Specialties, Inc.*,
  121 SW.3d 7(Tex. App.–Fort Worth 2002, no pet. ..............................8

*SAS Inst., Inc. v. Breitenfeld*,
  167 S.W.3d 840 (Tex. 2005)..................................................................7

*Seagull Energy E & P, Inc. v. Eland Energy, Inc.*,
  207 S.W.3d 342 (Tex. 2006)..................................................................9

v

*Sherrick v. Wyland,*
14 Tex. Civ. App. 299, 37 S.W. 345 (1896)..............................................11

*Smith v. Garrett*,
29 Tex. 48 (1867) .....................................................................................11

*Tony Gullo Motors I, L.P. v. Chapa,*
212 S.W.3d 299 (Tex. 2006).....................................................................10

*Williams v. Compressor Eng'g Corp.,*
704 S.W.2d 469
(Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.) ......................13

*Wm. Cameron & Co. v. Am. Sur. Co. of N.Y.,*
55 S.W.2d 1032 (Tex. Comm'n App. 1932, judgm't adopted)..............10

*Woody v. J. Black's, L.P.,*
2013 WL 5744359 (Tex. App.–Amarillo Oct. 13, 2013, pet. denied) ...12

Statutes

Tex. Civ. Prac. & Rem. Code § 9.001, *et seq...*..........................................6

Tex. Civ. Prac. & Rem. Code § 10.001, *et seq.* ..........................................6

Tex. Civ. Prac. & Rem. Code § 38.001.....................................................12

Tex. Civ. Prac. & Rem. Code § 38.002.............................................. 14, 15

Tex. Civ. Prac. & Rem. Code § 38.005.....................................................12

Tex. Fin. Code § 34.301 ..............................................................................9

Rules

Tex. R. App. P. 9.4(e) ...............................................................................18

Tex. R. App. P. 9.4(i)................................................................................18

20090252.20140460/2125761.1

Tex. R. Civ. P. 13 ..................................................................................6

Tex. R. Civ. P. 21a ...............................................................................18

Tex. R. Civ. P. 166a(c) ...........................................................................7

20090252.20140460/2125761.1

## STATEMENT OF THE CASE

*Nature of Case*

Breach of bank deposit agreement.

*Trial Court*

The 164th District Court in Harris County, Texas, the Hon. Alexandra Smoots–Hogan

*Course of Proceedings*

Perry D. Felix d/b/a Han's Laser Technology Co. ("Felix") sued Prosperity Bank ("Prosperity") alleging unauthorized wire transfers from his account. CR.5–17. Prosperity counterclaimed alleging untimely notice and resulting breach of the deposit contract's covenant not to sue. SuppCR.183–86. Prosperity moved for summary judgment on Felix's claims and the counterclaim. CR.84, *et seq.;* SuppCR.77, *et seq.*; 103, *et seq.*; SuppCR.225, *et seq.* 133, *et seq.;* SuppCR.3, *et seq.*

*Trial Court's Disposition*

The trial court granted summary judgment in favor of Prosperity on all Felix's claims against Prosperity and all Prosperity's claims against Felix but declined to award attorneys' fees to Prosperity. CR.172–73.

1

## Cross Issue Presented

The trial court erred by failing to award attorneys' fees to Prosperity for Felix's breach of the written deposit agreement.

## Preliminary Statement

This cross–appellant's brief focuses on Prosperity's counterclaim for attorneys' fees. The record conclusively shows (i) the contract includes a conditioned covenant not to sue; (ii) without satisfying the condition precedent, suit was filed; and (iii) despite notice and opportunity to stand down, Felix elected to continue prosecuting the claims in violation of his agreement not to sue.

Prosperity reserves for its appellee's brief arguments responsive to such issues as Felix, as appellant, may present.

## Statement of Facts Pertinent to Prosperity's Cross Issue

Felix had a deposit account at Prosperity. *See* SuppCR.87–91, 93, 94–100. The account was governed by a written deposit agreement. *See id.* The written agreement provides, in part:

> STATEMENTS – You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts.
>
> * * *

20090252.20140460/2125761.1

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours.

This 60 day limitation is without regard to whether we exercised ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

SuppCR.93; *see also* SuppCR.97.

Prosperity sent statements of the account monthly. SuppCR.89; *see also* SuppCR.101–20. Felix contends he promptly examined the account statements. SuppCR.156 (resp. to req. for adm'n #18). Each of the wire transfers for which Felix sued is disclosed on a statement of the account (*see* SuppCR.101–20); the last two transactions appear on the statement dated December 31, 2010. *See* SuppCR.115–17.

Felix claims to have requested additional documentation – at the earliest between December 16, 2010 and March 29, 2011 – regarding unspecified wire transfers. The first indication that Felix actually identified particular wire transfers he considered problematic, *i.e.*, notified Prosperity of relevant facts (*see* SuppCR.93, 97), is his purported July 12,

20090252.20140460/2125761.1

2011 telephone call and follow–up e–mail. *See* SuppCR.208. Of four transactions identified – "[t]he other wire transfers and amounts can be dismissed . . ." (*id.*), Felix admitted in discovery that two were authorized. SuppCR.149. As to his authorization of a third wire transfer identified in the email (8/9/10; $5,832.00), Felix answered "unable to either admit or deny." SuppCR.153. And, the fourth (8/26/2010; $21,770.00) Felix responded, "denied"; but, he expounded that the transfer appeared to duplicate a previous transfer and that Prosperity failed to "combine[] or consolidate[]" transfers to the same vendor "to avoid duplicate transaction fees as was customary for wire transfers submitted and authorized by Plaintiff." SuppCR.150.

Felix sent a letter to Prosperity's Mr. Gonzales (in Houston) dated September 23, 2011. SuppCR.210–11. The letter requests documents regarding wire transfers for the period "March 2010 through 2011." *Id.* Despite his July statement that "[t]he other wire transfers and amounts can be dismissed . . ." (SuppCR.208), Felix included a list of 23 transactions. SuppCR.211. Neither the letter nor the list describes any transaction as unauthorized. SuppCR.210–11.

20090252.20140460/2125761.1

Felix sent another letter, also dated September 23, 2011, to Prosperity's Mr. Zalman at the Corporate Office in El Campo. *See* SuppCR.121–22. Felix listed eleven transfers and described two "faxed wire transfer requests" as "fraudulent." SuppCR.121. One of the so–called "fraudulent" transactions is the same 8/26/2010, $21,770.00 transaction mentioned above.[1] *See* SuppCR.150. Regarding the other so–called "fraudulent" transaction (10/19/2010), Felix had previously described his "investigat[ion]." *See* SuppCR.208. The July 12, 2011 email did not challenge authorization for the transfer. Rather, Felix wrote, "I have a record of this transfer however the vendor claimed they did not receive payment . . .." *Id.* In any event, Felix's report was more than 60 days after all related statements.

Prosperity's October 3, 2011 response specifically addressed the two so–called "fraudulent" transactions – August 26, 2010 ($21,770.00); October 19, 2010 ($31,146.00) – including how each was initiated and to whom each was sent. SuppCR.44. Prosperity's letter specifically referred to the deposit agreement provision requiring notice of any claimed errors within 60 days and Felix's failure to have provided such notice. *Id.*

---

[1] There also was a $38,849.00 wire on 8/26/2010. Felix gave a similar interrogatory response claiming supposed duplication of transaction fees, not a lack of authorization to wire funds. SuppCR.151.

5

Almost two years later Felix sued. CR.5. In a letter dated October 7, 2013, counsel for Prosperity requested dismissal of the suit referencing Texas Rule of Procedure 13, Texas Civil Practice and Remedies Code chapters 9 and 10 and terms of the account agreement. SuppCR.166–68. As above, the account agreement includes that Felix had 30 days to examine statements and report problems. SuppCR.93; SuppCR.97. The contract includes Felix's "further agree[ment]" that if he failed to report errors within 60 days of statement availability, he "cannot assert a claim … on any item in that statement . . .." *Id.* With demand and the opportunity to do so, Felix declined to dismiss his claims against Prosperity.

## SUMMARY OF THE ARGUMENT

An agreement not to assert a claim should be treated as any other contractual obligation.

In a relationship governed by a written contract, Felix failed to comply with a condition precedent by failing to review statements *and* report relevant facts within 30 days. Felix also failed to honor his agreement that he cannot assert a claim without first having reported allegedly "unauthorized signatures, alterations, forgeries or any other errors" within 60 days of when a statement containing a supposed error was made available. Felix's failure to comply with the agreement injured

6

Prosperity including the costs and fees incurred to respond to claims Felix agreed he "cannot assert." Prosperity is entitled to enforce the contract as written and recover the foreseeable damages caused by Felix's breach. Having granted summary judgment in Prosperity's favor on all of its claims against Felix (CR.173), the trial court abused its discretion by failing to award damages supported by the pleadings, the motion and the summary judgment evidence.

<u>ARGUMENT & AUTHORITIES & STANDARD OF REVIEW</u>

## Standard of Review

To show itself entitled to relief through a traditional motion for summary judgment, Prosperity must have established that no issue of material fact exists on its counterclaim and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). The Court's review is de novo. *Jim Maddox Properties, LLC v. WEM Equity Capital Investments, Ltd.*, 446 S.W.3d 126, 131 (Tex. App.–Houston [1st Dist.] 2014, no pet.) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009)).

Where the motion and summary judgment evidence facially establish the movant's right to judgment as a matter of law, the burden

7

shifts to the non–movant to raise a genuine, material fact issue sufficient to defeat summary judgment. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23–24 (Tex. 2000). A material fact issue is "genuine" only if the evidence is such that "a reasonable jury could find the fact in favor of the nonmoving party." *Rayon v. Energy Specialties, Inc.*, 121 SW.3d 7, 11 (Tex. App.–Fort Worth 2002, no pet.).

**Felix failed to comply with the written agreement.**

Prosperity counterclaimed for breach of the written deposit agreement. SuppCR.183–86. The contract was conclusively proved to exist. *See* SuppCR.87–91, 93, 94–100. The contract includes Felix's agreement that he cannot assert the claims he asserted without first having complied with his duty to timely report. SuppCR.93, 97. Felix's failure to comply with his contractual obligation to report any problems appearing on an account statement within 30 days or 60 days after any specific account statement was made available was conclusively established. *See, e.g.*, SuppCR.89. Nevertheless, Felix sued. Prosperity's injury was foreseeable; it was required to appear, defend the claims and assert its right to enforce the contract as written. Prosperity conclusively established the injury and the amount of fees it incurred. *See* SuppCR.74–76, 124–26.

8

Because Prosperity conclusively established its injury that would not have occurred but for Felix's breach, Prosperity was entitled to recover its fees and the trial court erred by failing to award them.

**The deposit agreement is treated like any contract.**

"A deposit contract between a bank and an account holder is considered a contract in writing for all purposes …." Tex. Fin. Code § 34.301. When interpreting a contract the court endeavors "to ascertain and give effect to the intent of the parties as that intent is expressed in the contract." *See, e.g., Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Flavor Finish Resurfacing, L.L.C. v. Ellerkamp*, 01–11–00099–CV, 2012 WL 3776345, at *4 (Tex. App.–Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op.). The trial court properly construed the plain language to the effect that Felix "further agree[d] that if [he] fail[ed] to report any unauthorized signatures, alterations, forgeries or any other errors in [the] account within 60 days of when we make the statement available, you cannot assert a claim against [Prosperity] on any items in that statement" (*see* SuppCR.93, 97) and determined that Felix breached that agreement. CR.172–73. However, the trial court erred by failing to award attorneys' fees, the fees and expenses necessarily incurred in responding to a suit Felix promised not to bring.

9

The Court reviews decisions regarding the award of attorneys' fees de novo. *See G.R.A.V.I.T.Y. Enters., Inc. v. Reece Supply Co.,* 177 S.W.3d 537, 546 (Tex. App.–Dallas 2005, no pet.).

**Attorneys' fees are recoverable.**

The general rule in Texas is that attorney's fees incurred in prosecuting or defending a lawsuit are not recoverable in that suit absent a statute or contract allowing the recovery. *See Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex. 2006) ("Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees."); *Wm. Cameron & Co. v. Am. Sur. Co. of N.Y.,* 55 S.W.2d 1032, 1035 (Tex. Comm'n App. 1932, judgm't adopted) ("It is settled law in this state that, unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract."). The rule is known as the American Rule. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res.,* 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L.Ed.2d 855 (2001) ("[P]arties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser."); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S. Ct. 1404,

20090252.20140460/2125761.1

18 L.Ed.2d 475 (1967). The rationale was succinctly stated well over a century ago in *Sherrick v. Wyland,* 14 Tex. Civ. App. 299, 37 S.W. 345, 345 (1896): "It has often been ruled, in this state and elsewhere, that fees of counsel, incurred in prosecuting a suit for or defending against a wrong, are not ordinarily recoverable as actual damages, because they are not considered proximate results of such wrong." *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 120 (Tex. 2009). Here the fees incurred are the proximate result of Felix's breach; but for his non–compliance, there would have been no suit to defend and no counterclaim to pursue. Both the contract and a statute afford Prosperity the right to recover the fees for which it counterclaimed.

The contract includes Felix's express agreement not to make a claim without first having timely reported the problem underlying the suit. SuppCR.93, 97. Texas law has been clear for over 100 years:

> A covenant not to sue may be plead in suspension of action by the debtor whenever broken, and its observance will be enforced, and damages for breach may be recovered.

*Smith v. Garrett*, 29 Tex. 48, 52 (1867). Further, the contract itself need not provide for attorneys' fees. *See Helping Hands Home Care, Inc. v. Home Health of Tarrant County, Inc.,* 393 S.W.3d 492, 516 (Tex. App.– Dallas 2013, pet. denied).

11

**Prosperity is entitled to its fees under Chapter 38.**

The statute, chapter 38 of the Civil Practice and Remedies Code,[2] has been applied by this Court and others to afford the relief to which Prosperity is entitled. *See, e.g., Boyaki v. John M. O'Quinn & Associates, PLLC*, 01–12–00984–CV, 2014 WL 4855021, at *13–14 (Tex. App.–Houston [1st Dist.] Sept. 30, 2014, pet. filed) (mem. op.); *Woody v. J. Black's, L.P.*, 07–12–00192–CV, 2013 WL 5744359, at *6 (Tex. App.–Amarillo Oct. 13, 2013, pet. denied) (mem. op.) ("injunction enforcing specific performance of a contract is something of value" sufficient to support Chapter 38 attorneys' fees and rejecting argument that an award of monetary damages were required); *Albataineh v. Eshtehardi*, 01–12–00671–CV, 2013 WL 1858864, at *1–2 (Tex. App.–Houston [1st Dist.] May 2, 2013, no pet.) (mem. op.) ("judgment requiring specific performance of a material contract right can support an award of attorney's fees"); *Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 287 (Tex. App.–Houston [14th Dist.] 2003, pet. denied) (holding that award of specific performance of arbitration agreement permitted recovery

---

[2]       *See* Tex. Civ. Prac. & Rem. Code § 38.001, *et seq.* "The Legislature instructs us to construe section 38.001 'liberally … to promote its underlying purposes.'" *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (quoting Tex. Civ. Prac. & Rem. Code § 38.005).

of Chapter 38 attorneys' fees and rejecting argument that monetary damages were required); *Williams v. Compressor Eng'g Corp.,* 704 S.W.2d 469, 474 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.) (interpreting Chapter 38 to authorize an award of attorneys' fees when a party "successfully prosecutes a claim founded on ... written contracts.").[3] Thus, as the Court held in *Boyaki*, if the evidence supports a finding that such relief – there a promise to end litigation; here a promise not to sue in the first place – is of more than nominal economic value, section 38.001 affords the claimant its attorneys' fees, provided that all other conditions to a right to recovery under that chapter are met. *Boyaki,* 2014 WL 4855021, at *14.

## Prosperity complied with Chapter 38.

Prosperity satisfied "all other conditions" to its right to recover under Chapter 38. Prosperity was represented by counsel; it presented the counterclaim to Felix by letter (SuppCR.45–47); and Felix failed to "pay" by failing to dismiss his unfounded suit within thirty days of presentment.

---

[3] *But see, e.g., Haubold v. Medical Carbon Research Inst.*, 2014 WL 1018008 at *5–6 (Tex. App.–Austin March 14, 2014, no pet.) (mem. op.) (specific performance to enforce Rule 11 agreement was not a recovery of actual damages; thus fees incurred in enforcing the agreement were not recoverable); *Berg v. Wilson*, 353 S.W.3d 166, 182 (Tex. App.–Texarkana 2011, pet. denied) (concluding, "because Wilson did not recover actual damages, she was not entitled to recover attorneys' fees on her [Rule 11] breach of contract claim," but affirming award on alternative basis).

20090252.20140460/2125761.1

Tex. Civ. Prac. & Rem. Code § 38.002; *see Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 817 (Tex. 2006); *see also Honeycutt v. Billingsley*, 992 S.W.2d 570, 581 (Tex. App.–Houston [1st Dist.] 1999, pet. denied).

**Prosperity conclusively proved its fees.**

Prosperity proved the reasonableness, necessity and amount of its fees. SuppCR.74–76, 90, 124–26. Felix did not controvert and did not object to the affidavit testimony of attorneys William Huttenbach and Charles Pignuolo. *See Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989) (Testimony of an interested witness may establish a fact as a matter of law only if: (1) the testimony could be readily contradicted if untrue; (2) it is clear, direct, and positive; and (3) there are no circumstances tending to discredit or impeach it.). Attorney Huttenbach testified that reasonable and necessary attorneys' fees comprised his firm's calculated charges of $8,500.00 as of the date of his affidavit (October 17, 2014; SuppCR.76), plus anticipated additional fees for twelve hours at the rate of $345.00 per hour, plus fees previously incurred for services rendered by Mr. Pignuolo. SuppCR.74–75. Attorney Pignuolo testified that his firm's reasonable and necessary fees and out–of–pocket expenses through the date of his affidavit (April 17, 2014; SuppCR.126) totaled

14

$8,539.52 and would likely increase at the rate of $300.00 per hour thereafter. SuppCR.125. Based on the testimony, Prosperity conclusively proved reasonable and necessary attorneys' fees in at least the amount of $21,197.52.

Having conclusively proved Felix's failure to comply with his agreement not to assert the claims he asserted; having established the elements of section 38.002; and, having presented clear, direct, positive and uncontroverted evidence of the amount of its reasonable and necessary attorneys' fees, award of such fees was mandatory. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Anderson v. McCormick*, 01–12–00856–CV, 2013 WL 5884931, at *5 (Tex. App.–Houston [1st Dist.] Oct. 31, 2013, no pet.). On this record, the trial court had no discretion to award $0.00. *See Pala v. Maxim*, 01–01–00618–CV, 2002 WL 188567, at *6 (Tex. App.–Houston [1st Dist.] Feb. 7, 2002, no pet.) (citing *Bocquet, supra*). Prosperity, therefore, is entitled to reversal and rendition as to the portion of the judgment omitting an award of Prosperity's fees.

[In the alternative, only, should the Court determine that Prosperity's fees were not conclusively established below, based on the foregoing arguments and record references (*see, e.g.*, SuppCR.74–76, 124–26), there is some evidence of the reasonableness, necessity and an amount

of fees. Consequently, Prosperity is entitled – at minimum – to remand for a determination of the correct amount to be awarded.]

<u>C</u>ONCLUSION <u>&</u> <u>P</u>RAYER

For at least the foregoing reasons, Prosperity asks the Court to reverse the trial court's judgment, in part, and to render judgment in Prosperity's favor as to all liability issues and to render judgment that Prosperity recover the amount of $21,179.52 from Felix and for all additional or alternative relief to which it may be justly entitled.

Respectfully submitted,

HIRSCH & WESTHEIMER, P.C.

By: /s/ Michael D. Conner
  Michael D. Conner
  State Bar No. 04688650
  mconner@hirschwest.com
  William "Pat" Huttenbach
  State Bar No. 24002330
  phuttenbach@hirschwest.com
  Jacob M. Stephens
  State Bar No. 24066143
  jstephens@hirschwest.com
  1415 Louisiana, 36th Floor
  Houston, Texas 77002
  Telephone: (713) 220–9162
  Facsimile: (713) 223–9319

ATTORNEYS   FOR
APPELLEE/CROSS APPELLANT,
PROSPERITY BANK

16

## CERTIFICATE OF COMPLIANCE

I do hereby certify that the relevant contents of this document consist of 3,279 words, in compliance with Tex. R. App. P. 9.4(i) and this document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Goudy Old Style font.

*/s/ Michael D. Conner*
Michael D. Conner

## CERTIFICATE OF SERVICE

On the 25th day of March, 2015, the foregoing document was served pursuant to Rule 21a of the Texas Rules of Civil Procedure as indicated below:

J. Steven Stewart
5353 West Alabama, Suite 605
Houston, Texas 77056
E–mail: jss@jstevenstewart.com
*Via E–Service*

*/s/ Michael D. Conner*
Michael D. Conner

20090252.20140460/2125761.1

# No. 01–14–00997–CV

In the First Court of Appeals
Houston, Texas

---

Perry D. Felix d/b/a Han's Laser Technology Co., Appellant

v.

Prosperity Bank, Appellee

---

From the 164th District Court, Harris County, Texas
Cause No. 2013–50191

---

## APPENDIX

---

Final Judgment signed November 14, 2014 ........................................ Tab 1

Deposit Account Terms and Conditions (Royal Oaks Bank)
(for legibility: CR.32–33 as attached to Felix's Original Petition;
SuppCR.92–93 as attached to Prosperity's Motion for Summary
Judgment) .............................................................................. Tab 2

Deposit Account Terms and Conditions (Prosperity Bank)
(for legibility: CR.35–40 as attached to Felix's Original Petition;
SuppCR.95–100 as attached to Prosperity's Motion for Summary
Judgment) .............................................................................. Tab 3

18

# Tab 1

NO. 2013-50191

PERRY D. FELIX D/B/A HAN'S LASER  §    IN THE DISTRICT COURT OF
TECHNOLOGY CO.                     §
                                   §
                                   §
                                   §    HARRIS COUNTY, TEXAS
V.                                 §
                                   §
PROSPERITY BANK and PROSPERITY     §    164TH JUDICIAL DISTRICT
BANCSHARES, INC

## SUMMARY JUDGMENT

On this day came on to be heard Defendant Prosperity Bank's original Motion for Summary Judgment and Supplement to its previously filed Motion for Summary Judgment on all claims by and between Plaintiff and Prosperity Bank   For the reasons stated in said Motion and Supplement, this Court grants a summary judgment in favor of Prosperity Bank on all of Plaintiff's claims against Prosperity Bank and on all of Prosperity Bank's claims against Plaintiff.  Plaintiff has produced no evidence to the contrary.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Plaintiff, Perry D Felix d/b/a Han's Laser Technology Co  ("**Plaintiff**" and/or "**Felix**"), shall take nothing on Plaintiff's claims against Prosperity Bank.

IT IS ALSO ORDERED, ADJUDGED AND DECREED that Prosperity Bank recover a judgment against Plaintiff in the amount of Twenty-One Thousand Five Hundred and no/100 Dollars ($21,500.00), for Prosperity Bank's reasonable and necessary attorneys' fees, costs and expenses.

IT IS ALSO ORDERED, ADJUDGED AND DECREED that if Plaintiff files a Notice of Appeal, and Prosperity Bank ultimately prevails, Prosperity Bank is awarded an additional $30,000.00 for additional reasonable and necessary attorneys' fees, costs and expenses, and if any party appeals to the Texas Supreme Court and Prosperity Bank ultimately prevails,

20090252 20140460/1929592 2

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

**FILED**
Chris Daniel
District Clerk

NOV 14 2014

Time:_____
Harris County, Texas 72
By_____
         Deputy

Prosperity Bank is awarded an additional $25,000.00 in additional reasonable and necessary attorneys' fees, costs and expenses, and an additional $20,000.00 if the Texas Supreme Court grants the writ.

IT IS ALSO ORDERED, ADJUDGED AND DECREED that Prosperity Bank is awarded post-judgment interest at the rate of 5% per annum on the above-referenced amounts from the date of this judgment until paid.

All relief not expressly granted herein by and between Plaintiff and Prosperity Bank is denied. This judgment finally disposes of all claims by and between Plaintiff and Prosperity Bank and is appealable. This is meant to be a final judgment pursuant to the Texas Supreme Court's decision in *Lehmann v Har-Con Corp*, 39 S W 3d 191 (Tex 2001).

Signed on the __14th__ day of __November__, 2014.

_____
PRESIDING JUDGE

**APPROVED AS TO FORM:**

HIRSCH & WESTHEIMER, P.C.

By /s/ *William P Huttenbach*
    William P. Huttenbach
    State Bar No. 24002330
    Jacob M Stephens
    State Bar No 24066143
    1415 Louisiana, 36th Floor
    Houston, Texas 77002
    (713) 220-9184 WPH Direct
    (713) 220-9125 JMS Direct
    (713) 223-5181 Main
    (713) 223-9319 Fax
    phuttenbach@hirschwest com
    jstephens@hirschwest.com

**ATTORNEYS FOR DEFENDANT,**
**PROSPERITY BANK**

2

# Tab 2

ROYAL OAKS BANK, ssb-MAIN OFFICE
12000 WESTHEIMER RD   SUITE 100
HOUSTON, TX 77077

**ACCOUNT NUMBER** ██████

**ACCOUNT OWNER(S) NAME & ADDRESS**

PERRY D FELIX
DBA HAN'S LASER TECHNOLOGY CO
12455 WESTPARK DR STE G6
HOUSTON TX   77082

**OWNERSHIP OF ACCOUNT - CONSUMER** (Select one by placing your initials next to account selected.)
UNIFORM SINGLE-PARTY OR MULTIPLE-PARTY ACCOUNT SELECTION FORM NOTICE: THE TYPE OF ACCOUNT YOU SELECT MAY DETERMINE HOW PROPERTY PASSES ON YOUR DEATH. YOUR WILL MAY NOT CONTROL THE DISPOSITION OF FUNDS HELD IN SOME OF THE FOLLOWING ACCOUNTS.

- [ ] _____ SINGLE-PARTY ACCOUNT WITHOUT "P.O.D." (Payable on Death) DESIGNATION
- [ ] _____ SINGLE-PARTY ACCOUNT WITH "P.O.D." (Payable on Death) DESIGNATION
- [ ] _____ MULTIPLE-PARTY ACCOUNT WITHOUT RIGHT OF SURVIVORSHIP
- [ ] _____ MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP
- [ ] _____ MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP AND "P.O.D." (Payable on Death) DESIGNATION
- [ ] _____ CONVENIENCE ACCOUNT
- [ ] _____ TRUST ACCOUNT (name beneficiaries below)
- [ ] _____ TRUST ACCOUNT SUBJECT TO SEPARATE AGREEMENT
- [ ] _____ DATED: _____
- [ ] _____ OTHER _____

NAME OR NAMES OF BENEFICIARIES:

DATE OPENED __10/30/06__ BY __CHERYL CRAWLEY__
INITIAL DEPOSIT $ __25,000.00__
- [ ] CASH  [ ] CHECK  [X] ____
HOME TELEPHONE # ____ CHECK
DRIVER'S LICENSE # ██████
E-MAIL ____
EMPLOYER ____
BUSINESS PHONE # __(281) 496-0606__
Name and address of someone who will always know your location: ____

Number of signatures required for withdrawal __1__
FACSIMILE SIGNATURE(S) ALLOWED?  [ ] YES  [X] NO

[    **ORIGINAL**    ]
x

SIGNATURE(S) - The undersigned agrees to the terms stated on every page of this form and acknowledge receipt of a completed copy. The undersigned further authorize the financial institution to verify credit and employment history and/or have a credit reporting agency prepare a credit report on the undersigned, as individuals. The undersigned also acknowledge the receipt of a copy and agree to the terms of the following disclosure(s):

- [X] Electronic Fund Transfers  [ ] Funds Availability  [ ] Privacy
- [ ] Truth in Savings  [ ] ____

(1): [ x _(signature)_    10-30-06 ]
     PERRY D FELIX
     I.D. # ██████    Other ██████

(2): [ x ____ ]
     I.D. # ____    Other ____

(3): [ x ____ ]
     I.D. # ____    Other ____

(4): [ x ____ ]
     I.D. # ____    Other ____

- [ ] The person(s) named below are Convenience Signers only (not owners)

[ x ____ ]
I.D. # ____    Other ____
[ x ____ ]
I.D. # ____    Other ____

**OWNERSHIP OF ACCOUNT - BUSINESS PURPOSE**
- [X] SOLE PROPRIETORSHIP  [ ] LIMITED LIABILITY COMPANY
- [ ] CORPORATION:  [ ] FOR PROFIT  [ ] NOT FOR PROFIT
- [ ] PARTNERSHIP  [ ] SOLE PROPRIETOR

BUSINESS: LASER
COUNTY & STATE OF ORGANIZATION: HARRIS    TX
AUTHORIZATION DATED: 10/30/06

- [X] NEW  [ ] EXISTING

TYPE OF ACCOUNT
- [X] CHECKING  [ ] SAVINGS
- [ ] MONEY MARKET  [ ] CERTIFICATE OF DEPOSIT
- [ ] NOW  [ ] ____

ACCOUNT NAME: Small Business Checking
- [ ] This is a Temporary account agreement.

**BACKUP WITHHOLDING CERTIFICATIONS**
TIN: ██████
- [X] TAXPAYER I.D. NUMBER - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.
- [X] BACKUP WITHHOLDING - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.
- [ ] EXEMPT RECIPIENTS - I am an exempt recipient under the Internal Revenue Service Regulations.

SIGNATURE: I certify under penalties of perjury the statements checked in this section and that I am a U.S. person (including a U.S. resident alien).

X _(signature)_    10-30-06
     (Date)

Experta™ ©1992 Bankers Systems, Inc., St. Cloud, MN Form MPSC-LAZ-TX 8/13/2003

(page 1 of 2)

Exhibit A

32

## YOUR DEPOSIT ACCOUNT TERMS AND CONDITIONS

**AGREEMENT** - These terms govern the operation of this account unless varied or supplemented in writing. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so that the singular includes the plural and the plural includes the singular. As used in this form, the words "we," "our," or "us" mean the financial institution and the words "you" or "your" mean the account holder(s). This account may not be transferred or assigned without our written consent.

Much of our relationship with our deposit customers is regulated by state and federal law, especially the law relating to negotiable instruments, the law regulating the methods of transferring property upon death and the rights of surviving spouses and dependents, the law pertaining to estate and other succession taxes, the law regarding electronic funds transfer, and the law regarding the availability of deposited funds. This body of law is too large and complex to be reproduced here.

The purpose of this form is to:

(1) summarize the rules applicable to the more common transactions;

(2) establish rules to govern transactions or circumstances which the law does not regulate; and

(3) establish rules for certain events or transactions which the law already regulates but permits variation by agreement.

We may permit some variations from this standard agreement, but any such variations must be agreed to in writing either on our signature card for the account or in some other written form.

**LIABILITY** - Each of you agrees, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges that may be imposed. You authorize us to deduct these charges as accrued directly from the account balance. You also agree to pay additional reasonable charges we may impose for services you request which are not contemplated by this agreement. Each of you also agrees to be jointly and severally liable for any account deficit resulting from charges or overdrafts, whether caused by you or another authorized to withdraw from this account, and the costs we incur to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

**DEPOSITS** - Any items, other than cash, accepted for deposit (including items drawn "on us") will be given provisional credit only until collection is final (and actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars). Subject to any other limitations, interest will be paid only on collected funds, unless otherwise provided by law. We are not responsible for transactions initiated by mail or outside depository until we actually record them. All transactions received after our "daily cut-off time" on a business day we are open, or received on a day in which we are not open for business, will be treated and recorded as if initiated on the next following business day that we are open.

**WITHDRAWALS** - Unless otherwise clearly indicated on the account records, any one of you who signs this form including authorized signers, may withdraw or transfer all or any part of the account balance at any time on forms approved by us. Each of you (until we receive written notice to the contrary) authorizes each other person signing this form to endorse any item payable to you or your order for deposit to this account or any other transaction with us. We may charge your account for a check, even though payment was made before the date of the check, unless we have received written notice of the postdating in time to give us a reasonable opportunity to act. The fact that we may honor withdrawal requests which overdraw the finally collected account balance does not obligate us to do so, unless required by law. Withdrawals will first be made from collected funds, and we may, unless prohibited by law or our written policy, refuse any withdrawal request against uncollected funds, even if our general practice is to the contrary. We reserve the right to refuse any withdrawal or transfer request which is attempted by any method not specifically permitted, which is for an amount less than any minimum withdrawal requirement, or which exceeds any frequency limitation. Even if we honor a nonconforming request, repeated abuse of the stated limitations (if any) may eventually force us to close this account. We will use the date a transaction is completed by us (as opposed to the day you initiate it) to apply the frequency limitations. On interest-bearing accounts other than time deposits, we reserve the right to require at least seven days' written notice before any withdrawal or transfer. Withdrawals from a time deposit prior to maturity or prior to the expiration of any notice period may be restricted and may be subject to penalty. See your notice of penalties for early withdrawal.

**ACH AND WIRE TRANSFERS** - This agreement is subject to Article 4A of the Uniform Commercial Code in the state in which you have your account with us. If you originate a fund transfer for which Fedwire is used, and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. If we receive a credit to an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

**OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION** - You intend these rules to apply to the account depending on the form of ownership and beneficiary designation, if any, specified on page 1. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds. Further, the type of account you select may determine how property passes on your death. Your will may not control the disposition of funds held in some of the following accounts. Single-Party Account Without P.O.D. Designation - The party to the account owns the account. On the death of the party, ownership of the account passes as a part of the party's estate under the party's will or by intestacy. Single-Party Account With P.O.D. Designation - The party to the account owns the account. On the death of the party, ownership of the account passes to the P.O.D. beneficiaries of the account. The account is not a part of the party's estate. Multiple-Party Account Without Right of Survivorship - The parties to the account own the account in proportion to the parties' net contributions to

the account. We may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes as a part of the party's estate under the party's will or by intestacy. Multiple-Party Account With Right of Survivorship - The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes to the surviving parties. Multiple-Party Account With Right of Survivorship and P.O.D. Designation - The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to a party at any time. On the death of the last surviving party, the ownership of the account passes to the P.O.D. beneficiaries. Convenience Account - The parties to the account own the account. One or more convenience signers to the account may make account transactions for a party. A convenience signer does not own the account. On the death of the last surviving party, ownership of the account passes as a part of the last surviving party's estate under the last surviving party's will or by intestacy. The financial institution may pay funds in the account to a convenience signer before the financial institution receives notice of the death of the last surviving party. The payment to a convenience signer does not affect the parties' ownership of the account. Trust Account - The parties named as trustees to the account own the account in proportion to the parties' net contributions to the account. A trustee may withdraw funds from the account. A beneficiary may not withdraw funds from the account before all trustees are deceased. On the death of the last surviving trustee, the ownership of the account passes to the beneficiary. The trust account is not a part of a trustee's estate and does not pass under the trustee's will or by intestacy, unless the trustee survives all of the beneficiaries and all other trustees. Organizational Accounts - We will usually require a separate authorization form designating the person permitted and conditions required for withdrawal from any account in the name of a legal entity such as an organization. We will honor such authorization according to its terms until it is amended or terminated in writing by the governing body of such organization.

**STOP-PAYMENTS** - You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cut-off time. To be effective, your stop-payment order must precisely identify the number, date and amount of the item, and the payee.

Our stop-payment cut-off time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop-payment are provided by law.

You may stop payment on any item drawn on your account whether you sign the item or not, if you have an equal or greater right to withdraw from this account than the person who signed the item. A release of the stop-payment request may be made only by the person who initiated the stop-payment.

**AMENDMENTS AND TERMINATION** - From time to time we may amend any term of this agreement upon giving you reasonable notice in writing or by any other method permitted by law, including, in appropriate circumstances, posting notice in our building. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Notice from us to any one of you is notice to all of you.

**STATEMENTS** - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts. If you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we contributed to the loss). The loss could be not only with respect to items on the statement but other items forged or altered by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours. This 60 day limitation is without regard to whether we exercised ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

**DIRECT DEPOSITS** - If, in connection with a direct deposit plan, we deposit any amount in this account which should have been returned to the Federal Government for any reason, you authorize us to deduct the amount of our liability to the Federal Government from this account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**TEMPORARY ACCOUNT AGREEMENT** - If this option is selected, we may restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**SETOFF** - We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

This right of setoff does not apply to this account if: (a) it is an IRA or other tax-deferred retirement account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), (c) the debtor's right of withdrawal only arises in a representative capacity, or (d) the debt is created by a home equity loan. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**FACSIMILE SIGNATURES** - You authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen on page 1 of this agreement, or that are filed separately with us, and contain the required number of signatures for this purpose.

(page 2 of 2)

Exitere! ©1983, 1990, 1991 Bankers Systems, Inc., St. Cloud, MN Form MPSC-LAZ-TX 8/13/2003

ROYAL OAKS BANK, ssb-MAIN OFFICE
12000 WESTHEIMER RD  SUITE 100
HOUSTON, TX 77077

**ACCOUNT NUMBER** ▓▓▓▓▓▓

ACCOUNT OWNER(S) NAME & ADDRESS

PERRY D .FELIX
DBA HAN'S LASER TECHNOLOGY CO
12455 WESTPARK DR STE G6
HOUSTON TX   77082

DATE OPENED  10/30/06   BY CHERYL CRAWLEY
INITIAL DEPOSIT $ 25,000.00
☐ CASH   ☐ CHECK   ☒   CHECK
HOME TELEPHONE #
DRIVER'S LICENSE ▓▓▓▓▓▓
E-MAIL ▓▓▓▓▓▓
EMPLOYER
BUSINESS PHONE #  (281) 496-0606
Name and address of someone who will always know your location:

Number of signatures required for withdrawal  1
FACSIMILE SIGNATURE(S) ALLOWED?  ☐ YES  ☒ NO

## OWNERSHIP OF ACCOUNT - CONSUMER (Select one by placing your initials next to account selected.)

UNIFORM SINGLE-PARTY OR MULTIPLE-PARTY ACCOUNT SELECTION FORM NOTICE: THE TYPE OF ACCOUNT YOU SELECT MAY DETERMINE HOW PROPERTY PASSES ON YOUR DEATH. YOUR WILL MAY NOT CONTROL THE DISPOSITION OF FUNDS HELD IN SOME OF THE FOLLOWING ACCOUNTS.

☐ _____ SINGLE-PARTY ACCOUNT WITHOUT "P.O.D." (Payable on Death) DESIGNATION

☐ _____ SINGLE-PARTY ACCOUNT WITH "P.O.D." (Payable on Death) DESIGNATION

☐ _____ MULTIPLE-PARTY ACCOUNT WITHOUT RIGHT OF SURVIVORSHIP

☐ _____ MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP

☐ _____ MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP AND "P.O.D." (Payable on Death) DESIGNATION

☐ _____ CONVENIENCE ACCOUNT

☐ _____ TRUST ACCOUNT (name beneficiaries below)

☐ _____ TRUST ACCOUNT SUBJECT TO SEPARATE AGREEMENT

DATED: _____

☐ _____ OTHER _____

NAME OR NAMES OF BENEFICIARIES:

[ ☐ ORIGINAL ]

[X _____ ]

SIGNATURE(S) - The undersigned agree to the terms stated on every page of this form and acknowledge receipt of a completed copy. The undersigned further authorize the financial institution to verify credit and employment history and/or have a credit reporting agency prepare a credit report on the undersigned, as individuals. The undersigned also acknowledge the receipt of a copy and agree to the terms of the following disclosure(s):

☒ Electronic Fund Transfers   ☐ Funds Availability   ☐ Privacy
☐ Truth in Savings   ☐ _____

(1): [ X _____ [signature] _____ 10-30-06 ]
PERRY D FELIX
I.D. # ▓▓▓▓▓▓   Other ▓▓▓▓▓▓

(2): [ X _____ ]
I.D. # _____   Other _____

(3): [ X _____ ]
I.D. # _____   Other _____

(4): [ X _____ ]
I.D. # _____   Other _____

☐ The person(s) named below are Convenience Signers only (not owners)

[ X _____ ]
I.D. # _____   Other _____

[ X _____ ]
I.D. # _____   Other _____

## OWNERSHIP OF ACCOUNT - BUSINESS PURPOSE

☒ SOLE PROPRIETORSHIP   ☐ LIMITED LIABILITY COMPANY
☐ CORPORATION:   ☐ FOR PROFIT   ☐ NOT FOR PROFIT
☐ PARTNERSHIP   ☐ SOLE PROPIERTOR

BUSINESS: LASER
COUNTY & STATE OF ORGANIZATION: HARRIS    TX
AUTHORIZATION DATED: 10/30/06

☒ NEW          ☐ EXISTING

TYPE OF ACCOUNT
☒ CHECKING   ☐ SAVINGS
☐ MONEY MARKET   ☐ CERTIFICATE OF DEPOSIT
☐ NOW   ☐

ACCOUNT NAME: Small Business Checking
☐ This is a Temporary account agreement.

TIN: ▓▓▓▓▓▓

☒ TAXPAYER I.D. NUMBER - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.

☒ BACKUP WITHHOLDING - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.

☐ EXEMPT RECIPIENTS - I am an exempt recipient under the Internal Revenue Service Regulations.

SIGNATURE: I certify under penalties of perjury the statements checked in this section and that I am a U.S. person (including a U.S. resident alien).

X _____ [signature] _____ 10-30-06
(Date)

Exerta™ © 1997 Bankers Systems, Inc., St. Cloud, MN Form MPSC-LAZ-TX 8/13/2003

(page 1 of 2)

EXHIBIT A-1

92

## YOUR DEPOSIT ACCOUNT TERMS AND CONDITIONS

**AGREEMENT** - These terms govern the operation of this account unless varied or supplemented in writing. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so that the singular includes the plural and the plural includes the singular. As used in this form, the words "we," "our," or "us" mean the financial institution and the words "you" or "your" mean the account holder(s). This account may not be transferred or assigned without our written consent.

Much of our relationship with our deposit customers is regulated by state and federal law, especially the law relating to negotiable instruments, the law regulating the methods of transferring property upon death and the rights of surviving spouses and dependents, the law pertaining to estate and other succession taxes, the law regarding electronic funds transfer, and the law regarding the availability of deposited funds. This body of law is too large and complex to be reproduced here.

The purpose of this form is to:
(1) summarize the rules applicable to the more common transactions;
(2) establish rules to govern transactions or circumstances which the law does not regulate; and
(3) establish rules for certain events or transactions which the law already regulates but permits variation by agreement.

We may permit some variations from this standard agreement, but any such variations must be agreed to in writing either on our signature card for the account or in some other written form.

**LIABILITY** - Each of you agrees, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges that may be imposed. You authorize us to deduct these charges as accrued directly from the account balance. You also agree to pay additional reasonable charges we may impose for services you request which are not contemplated by this agreement. Each of you also agrees to be jointly and severally liable for any account deficit resulting from charges or overdrafts, whether caused by you or another authorized to withdraw from this account, and the costs we incur to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

**DEPOSITS** - Any items, other than cash, accepted for deposit (including items drawn "on us") will be given provisional credit only until collection is final (and actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars). Subject to any other limitations, interest will be paid only on collected funds, unless otherwise provided by law. We are not responsible for transactions initiated by mail or outside depository until we actually record them. All transactions received after our "daily cut-off time" on a business day we are open, or received on a day in which we are not open for business, will be treated and recorded as if initiated on the next following business day that we are open.

**WITHDRAWALS** - Unless otherwise clearly indicated on the account records, any one of you who signs this form including authorized signers, may withdraw or transfer all or any part of the account balance at any time on forms approved by us. Each of you (until we) receive written notice to the contrary) authorizes each other person signing this form to endorse any item payable to you or your order for deposit to this account or any other transaction with us. We may charge your account for a check, even though payment was made before the date of the check, unless we have received written notice of the postdating in time to give us a reasonable opportunity to act. The fact that we may honor withdrawal requests which overdraw the finally collected account balance does not obligate us to do so, unless required by law. Withdrawals will first be made from collected funds, and we may, unless prohibited by law or our written policy, refuse any withdrawal request against uncollected funds, even if our general practice is to the contrary. We reserve the right to refuse any withdrawal or transfer request which is attempted by any method not specifically permitted, which is for an amount less than any minimum withdrawal requirement, or which exceeds any frequency limitation. Even if we honor a nonconforming request, repeated abuse of the stated limitations (if any) may eventually force us to close this account. We will use the date a transaction is completed by us (as opposed to the day you initiate it) to apply the frequency limitations. On interest-bearing accounts other than time deposits, we reserve the right to require at least seven days' written notice before any withdrawal or transfer. Withdrawals from a time deposit prior to maturity or prior to the expiration of any notice period may be restricted and may be subject to penalty. See your notice of penalties for early withdrawal.

**ACH AND WIRE TRANSFERS** - This agreement is subject to Article 4A of the Uniform Commercial Code in the state in which you have your account with us. If you originate a fund transfer for which Fedwire is used, and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. If we receive a credit to an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

**OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION** - You intend these rules to apply to this account depending on the form of ownership and beneficiary designation, if any, specified on page 1. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds. Further, the type of account you select may determine how property passes on your death. Your will may not control the disposition of funds held in some of the following accounts. Single-Party Account Without P.O.D. Designation - The party to the account owns the account. On the death of the party, ownership of the account passes as a part of the party's estate under the party's will or by intestacy. Single-Party Account With P.O.D. Designation - The party to the account owns the account. On the death of the party, ownership of the account passes to the P.O.D. beneficiaries of the account. The account is not a part of the party's estate. Multiple-Party Account Without Right of Survivorship - The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes as a part of the party's estate under the party's will or by intestacy. Multiple-Party Account With Right of Survivorship - The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes to the surviving parties. Multiple-Party Account With Right of Survivorship and P.O.D. Designation - The parties to the account own the account in proportion to the parties' net contributions to the account. We may pay any sum in the account to a party at any time. On the death of the last surviving party, the ownership of the account passes to the P.O.D. beneficiaries. Convenience Account - The parties to the account own the account. One or more convenience signers to the account may make account transactions for a party. A convenience signer does not own the account. On the death of the last surviving party, ownership of the account passes as a part of the last surviving party's estate under the last surviving party's will or by intestacy. The financial institution may pay funds in the account to a convenience signer before the financial institution receives notice of the death of the last surviving party. The payment to a convenience signer does not affect the parties' ownership of the account. Trust Account - The parties named as trustees to the account own the account in proportion to the parties' net contributions to the account. A trustee may withdraw funds from the account. A beneficiary may not withdraw funds from the account before all trustees are deceased. On the death of the last surviving trustee, the ownership of the account passes to the beneficiary. The trust account is not a part of a trustee's estate and does not pass under the trustee's will or by intestacy, unless the trustee survives all of the beneficiaries and all other trustees. Organizational Accounts - We will usually require a separate authorization form designating the person permitted and conditions required for withdrawal from any account in the name of a legal entity such as an organization. We will honor such authorization according to its terms until it is amended or terminated in writing by the governing body of such organization.

**STOP-PAYMENTS** - You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cut-off time. To be effective, your stop-payment order must precisely identify the number, date and amount of the item, and the payee.

Our stop-payment cut-off time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop-payment are provided by law.

You may stop payment on any item drawn on your account whether you sign the item or not. If you have an equal or greater right to withdraw from this account than the person who signed the item. A release of the stop-payment request may be made only by the person who initiated the stop-payment.

**AMENDMENTS AND TERMINATION** - From time to time we may amend any term of this agreement upon giving you reasonable notice in writing or by any other method permitted by law. Including, in appropriate circumstances, posting notice in our building. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Notice from us to any one of you is notice to all of you.

**STATEMENTS** - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized payments or alterations, you must promptly notify us of the relevant facts. If you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we contributed to the loss). The loss could be not only with respect to items on the statement but other items forged or altered by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, forgeries or any other errors in your account within 60 days of when we make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours. This 60 day limitation is without regard to whether we exercised ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

**DIRECT DEPOSITS** - If, in connection with a direct deposit plan, we deposit any amount in this account which should have been returned to the Federal Government for any reason, you authorize us to deduct the amount of our liability to the Federal Government from this account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**TEMPORARY ACCOUNT AGREEMENT** - If this option is selected, we may restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**SETOFF** - We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

This right of setoff does not apply to this account if: (a) it is an IRA or other tax-deferred retirement account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), (c) the debtor's right of withdrawal only arises in a representative capacity, or (d) the debt is created by a home equity loan. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**FACSIMILE SIGNATURES** - You authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that are drawn on us regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen on page 1 of this agreement, or that are filed separately with us, and contain the required number of signatures for this purpose.

Exñerñ © 1993, 1996, 1991 Bankers Systems, Inc., St. Cloud, MN   Form MPSC-LAZ-TX 8/13/2003

Tab 3

# PROSPERITY BANK®

| | | |
|---|---|---|
| Important Information Regarding FDIC Insurance Coverage | 1 | Notice of Negative Information | 4 |
| FASTLINE Guide | 1 | Electronic Fund Transfers: Your Rights and Responsibilities | 4 |
| Schedule of Fees | 2 | Your Ability to Withdraw Funds | 5 |
| Notice of Your Financial Privacy Rights | 2 | Substitute Checks and Your Rights | 6 |
| Terms and Conditions of Your Account | 3 | Banking Centers | 6 |

## IMPORTANT INFORMATION REGARDING FDIC INSURANCE COVERAGE

**FDIC General Deposit Insurance:** The standard insurance amount currently is $250,000 per depositor. The $250,000 limit is permanent for certain retirement accounts (includes IRAs) and is temporary for all other deposit accounts through December 31, 2013. On January 1, 2014, the standard insurance amount will return to $100,000 per depositor for all deposit accounts except certain retirement accounts, which will remain at $250,000 per depositor. The FDIC provides separate coverage for deposits held in different account ownership categories. Depositors may qualify for more coverage if they have funds in different ownership categories and all FDIC requirements are met. (For details on the requirements, go to www.fdic.gov/deposit/deposits.)

**TAG Program:** Additionally, Prosperity Bank is participating in the FDIC Transaction Account Guarantee Program. Under that program, through June 30, 2010, all non-interest-bearing transaction accounts are fully guaranteed by the FDIC for the entire amount in the account. Non-interest-bearing checking accounts include Demand Deposit Accounts (DDAs) and any transaction account that has unlimited withdrawals and that cannot earn interest. Also included are low-interest NOW accounts (NOW accounts that cannot earn more than 0.50% interest) and IOLTA accounts. Coverage under the Transaction Account Guarantee Program is in addition to and separate from the coverage available under the FDIC general deposit insurance rules. If funds in a non-interest-bearing transaction account are swept or transferred to an interest-bearing or non-deposit account, those swept or transferred funds are no longer eligible for the full guarantee provided under the Transaction Account Guarantee Program and the basic deposit insurance limit applies.

**Supplemental Coverage for Bank Mergers:** When two or more insured banks merge, deposits from the assumed bank are separately insured from deposits at the assuming bank for at least six months after the merger. This grace period gives a depositor the opportunity to restructure his or her accounts, if necessary. CDs from the assumed bank are separately insured until the earliest maturity date after the end of the six-month grace period. CDs that mature during the six-month period and are renewed for the same term and in the same dollar amount (either with or without accrued interest) continue to be separately insured until the first maturity date after the six-month period. If a CD matures during the six-month grace period and is renewed on any other basis, it would be separately insured only until the end of the six-month grace period.

## FASTLINE GUIDE

With FASTLINE, you may access your account by telephone 24 hours a day. To find your local FASTLINE number, please visit us on the web at www.prosperitybanktx.com/fastline.aspx or call your local banking center.

For your protection, we use the last 4 digits of your social security numbers for positive identification when first using the FASTLINE service. For added security, you will be prompted to choose your own private, 4-10 digit PIN to use for all subsequent transactions. We suggest you choose a number or word that is easy to remember. You will not enter your PIN number until you have selected the type of information you wish and have entered your account number.

Please have your account numbers ready. Upon entering the FASTLINE system, you will be prompted as follows:

1. To continue in English press 1, or stay on the line to continue in Spanish.
2. Press 1 for "Account Information"; Press 2 for "Funds Transfer".

**Accounts Information Menu**
- Press 1 for Checking
- Press 2 for Savings
- Press 3 for CD
- Press 4 for IRA
- Press 5 for Loans

- Checking Menu
    - Press 1 for Withdrawal (Debit and Check information)
    - Press 2 for Deposit Information
    - Press 3 for Funds Transfer (and Loan Payments)
    - Press 4 to Find Transactions (by check number or amount)
    - Press 5 for More Options (Balance, Interest, Change PIN)

- Savings Menu (prompts are same as Checking Menu)

- CD Menu
    - Press 1 for Balance
    - Press 2 for Interest Information
    - Press 3 to Change PIN

- IRA Menu (prompts are same as CD Menu)

- Loans Menu
    - Press 1 for Advances
    - Press 2 for Payments
    - Press 3 for Find Transactions (search for Advances or Payments by amount)
    - Press 4 for More Options (Balance, Interest, Change PIN)

**Funds Transfer Menu**
- Prompt for Type to Transfer From:
    - Press 1 to transfer From Checking
    - Press 2 to transfer From Savings
- Enter the From account number, followed by your PIN if prompted.
- Prompt for Type to Transfer To:
    - Press 1 to transfer To Checking
    - Press 2 to transfer To Savings
    - Press 3 to transfer To Loans

Other notes about using FASTLINE:
- Pressing the * key returns you to the previous menu.
- Pressing the # key takes you to the main menu.
- When listening to transaction history, you can press 7 to play the previous transaction, 8 to repeat the current transaction, or 9 to skip to the next transaction.

REV TLH 02/23/10 S:\Public Information\Operations Forms and Procedures\Fastline\Fastline\Guide- Fastline.doc

1

## SCHEDULE OF FEES

The following fees may be assessed against your account and the following transaction limitations, if any, apply to your account.

| | |
|---|---|
| ATM/Debit Transactions off premises | $1.00 |
| ATM Card | $1.00 monthly service charge |
| MasterCard ATM/Debit Card | $1.50 monthly service charge |
| Or MasterCard ATM/Debit Card | $12.00 annual service charge |
| Replace lost ATM or Debit Card | $5.00 |
| Change personal identification number (PIN for ATM or Debit card) | $5.00 |

*See Special Note Regarding ATM/Debit Withdrawal Surcharge Fees.

| | |
|---|---|
| Money Orders, Customer, each | $3.00 |
| Money Orders, Non Customers, each | $6.00 |
| Cashier's Check, Customer, each | $5.00 |
| Cashier's Check, Non Customer, each | $10.00 |
| Check Printing | (Fee depends on style of check ordered) |
| Temporary Check Fee | $2.00 per 10 checks |
| Account closed within 90 days of opening | $25.00 |
| Overdraft Transfer | $5.00 |
| Deposited Item Return, charge on checks returned or ACH transaction returned by the Federal Reserve | $5.00 |
| Nonsufficient funds "Return Check Charge" | $32.00 each item |
| Nonsufficient funds "Overdraft Charge" | $32.00 each item |
| Account Inquiry Fee | $2.00 |
| Telephone Transfers | $2.00 |
| Stop Payment | $25.00 each request |
| Hold Mail Request, monthly | $2.50 |
| Duplicate (Copy) Statement, monthly | $5.00 |
| Return Mail, monthly | $10.00 |
| Exception Items – Excessive MICR Rejects (>1% POD Items Processed monthly) | $0.15 each item |
| Exception Items – Excessive MICR Rejects (>1% Deposited Items) | $0.15 each item |
| Deposit Corrections (1st item in cycle at no charge) | $3.50 each correction |
| Statement Printout | $3.00 |
| Special Statement Cut Off Fee | $5.00 |
| Account Research | $25.00 per hour |
| Account Balancing Assistance | $25.00 per hour |
| Film/Image Copies, each | $3.00 |
| Photocopies, Customer, each | $0.50 |
| Photocopies, Non Customer, each | $1.00 |
| Fax, Outgoing | $3.00 first page, $1.00 each additional page |
| Fax, Incoming | $2.00 first page, $1.00 each additional page |
| Wire Fax Notification, each | $2.00 |
| Wire Transfers-US Dollar, Customer, each | $15.00 |
| Wire Transfers-US Dollar, Non Customer, each | $25.00 |
| Wire Transfer-Foreign Currency, Customer, each | $40.00 plus cost |
| Wire Transfer-Foreign Currency, Non Customer, each | $50.00 plus cost |
| Collections, Customer | $10.00 |
| Collections, Non Customer | $25.00 |
| Night Depository, Lock Bags | $20.00 |
| Night Depository, Key for Deposit Receptacle | $5.00 |
| Tax Levies, each | $50.00 |
| Credit Report (loan purpose only) | $5.00 |
| Notary Service | $5.00 |
| Security Transactions | $35.00 |
| Collection Notes, Set up | $20.00 |
| Charge per payment | $10.00 |
| Traveler's Checks, One Signature | 1% of amount purchased |
| Traveler's Checks, Two Signatures | 1.5% of amount purchased |
| Non Customer Check Cashing | 1% of check amount, $5.00 minimum |

Safe Deposit Box Rental (where available) – Safe Deposit Box Annual Rate and Rental Fees vary by Bank location. Contact a Prosperity Bank location in your area for box availability and annual rental fees.

| | |
|---|---|
| Initial Key Deposit | $20.00 |
| Safe Deposit Box Drilling | $25.00 plus vendor's charge |
| Replacement of Lost Key | $10.00 |

Customer assumes all cost of drilling of box and key replacement.

*Special Note Regarding ATM/Debit Card Withdrawals and Other Banks' Surcharge Fees: Non-Prosperity Bank ATM machines may charge you a surcharge fee to use that machine. This is not a Prosperity Bank fee, but instead, the other bank's or vendor's fee. With the expanded network of Prosperity Bank ATM machines available, any refunds, reversals, or waivers of the surcharge fee as previously provided by First Bank will be discontinued effective close of business April 30, 2010.

Overdraft Items: When you write a check, withdraw money from an ATM or use your Debit card to make a purchase, or any other withdrawal request made for more than the available balance in your checking account, at our discretion, Prosperity Bank may pay the item and overdraw your account. An Overdraft Charge per item will be assessed for each item paid into the overdraft at a rate disclosed in the Prosperity Bank Schedule of Fees. Prosperity Bank is not obligated to pay any item presented for payment if the account does not contain sufficient collected (available) funds. Any payment by the Bank of a nonsufficient fund check or checks (or other item) does not obligate the Bank to pay any additional or subsequent nonsufficient fund checks or items. Additionally, the Bank is not obligated to provide prior written notice of a decision to refuse to pay any additional nonsufficient check or item.

## NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Prosperity Bank.
This is our privacy notice for our customers. When we use the words "you" and "your" we mean the following types of customers:

- Our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as a:
  - Deposit account
  - Loan account
  - Safe deposit box
  - Self-directed Individual Retirement Account

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information. We first define some terms.

Nonpublic personal information means information about you that we collect in connection with providing a financial product or service to you. Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records. Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section.

An affiliate is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.

A nonaffiliated third party is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

The Information We Collect: We collect information about you from the following sources:

- Information you give us on applications or other forms
- Information about your transactions with us
- Information about your transactions with other parties
- Information from a consumer reporting agency
- Information we receive as a result of verifying customer information

Information We Disclose About You: We do NOT disclose any information about you to anyone, except as permitted by law. Examples of this might include disclosures necessary to service your account or prevent unauthorized transactions.

The Confidentiality, Security, and Integrity of Your Information: We restrict access to information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

Information About Former Customers: We do not disclose information about former customers, except as permitted by law.

Texas Notice: This institution is chartered, licensed, or registered under the laws of the State of Texas and by state law is subject to regulatory oversight by the Texas Department of Banking. Any consumer wishing to file a complaint against this institution should contact the Texas Department of Banking through one of the means indicated below:

- In Person or U.S. Mail: 2601 North Lamar Boulevard, Suite 300, Austin, Texas 78705-4294
- Telephone No.: 877/276-5554
- Fax No.: 512/475-1313
- E-mail: consumer.complaints@banking.state.tx.us
- Website: www.banking.state.tx.us

## TERMS AND CONDITIONS OF YOUR ACCOUNT

**Agreement:** This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully. If you sign the signature card or open or continue to have your account with us, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees if they are not included in this document. If you have any questions, please call us.

This agreement is subject to applicable federal laws and the laws of the state of Texas (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

(1) Summarize some laws that apply to common transactions;
(2) Establish rules to cover transactions or events which the law does not regulate;
(3) Establish rules for certain transactions or events which the law regulates but permits variation by agreement; and
(4) Give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document.

As used in this document the words "we," "our," and "us" mean the financial institution and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular. "Party" means a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary or agent.

**Liability:** You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges directly from the account balance as accrued.

You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and can be deducted directly from the account balance whenever sufficient funds are available. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft. This includes liability for our costs to collect the deficit including, to the extent permitted by law, our reasonable attorneys' fees.

**Deposits:** We will give only provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). Actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. We will treat and record all transactions received after our "daily cutoff time" or a business day we are open, or received on a day we are not open for business, as if initiated on the next following business day that we are open.

**Withdrawals:** Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs in the space designated for signatures on the signature card may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person signing the signature card to indorse any item payable to you or your order for deposit to this account or any other transaction with us. We may charge your account for a check even though payment was made before the date of the check, unless we have received written notice of the postdating in time to have a reasonable opportunity to act. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us, by any method we do not specifically permit, which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. Even if we honor a nonconforming request, we may treat continued abuse of the stated limitations (if any) as your act of closing the account. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. The fact that we may honor withdrawal requests that overdraw the available account balance does not obligate us to do so later. See the Funds Availability Policy disclosure for information

about when you can withdraw funds you deposit. For those accounts for which our funds availability policy disclosure does not apply, you can ask us when you make a deposit when those funds will be available for withdrawal.

We may require not less than 7 days notice in writing before each withdrawal from an interest-bearing account other than a time deposit, or from any other savings account as defined by Regulation D. Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**Ownership of Account and Beneficiary Designation:** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Single-Party Account Without "P.O.D." (Payable on Death) Designation:** The party to the account owns the account. On the death of the party, ownership of the account passes as a part of the party's estate under the party's will or by intestacy.

**Single-Party Account With "P.O.D." (Payable on Death) Designation:** The party to the account owns the account. On the death of the party, ownership of the account passes to the P.O.D. beneficiaries of the account. The account is not a part of the party's estate.

**Multiple-Party Account Without Right of Survivorship:** The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes as a part of the party's estate under the party's will or by intestacy.

**Multiple-Party Account With Right of Survivorship:** The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of a party, the party's ownership of the account passes to the surviving parties.

**Multiple-Party Account With Right of Survivorship and "P.O.D." (Payable on Death) Designation:** The parties to the account own the account in proportion to the parties' net contributions to the account. The financial institution may pay any sum in the account to a party at any time. On the death of the last surviving party, the ownership of the account passes to the P.O.D. beneficiaries.

**Convenience Account:** The parties to the account own the account. One or more convenience signers to the account may make account transactions for a party. A convenience signer does not own the account. On the death of the last surviving party, ownership of the account passes as a part of the last surviving party's estate under the last surviving party's will or by intestacy. The financial institution may pay funds in the account to a convenience signer before the financial institution receives notice of the death of the last surviving party. The payment to a convenience signer does not affect the parties' ownership of the account.

**Trust Account:** The parties named as trustees to the account own the account in proportion to the parties' net contributions to the account. A trustee may withdraw funds from the account. A beneficiary may not withdraw funds from the account before all trustees are deceased. On the death of the last surviving trustee, the ownership of the account passes to the beneficiary. The trust account is not a part of a trustee's estate and does not pass under the trustee's will or by intestacy, unless the trustee survives all of the beneficiaries and all other trustees.

**Business Accounts:** Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. We may require the governing body of the legal entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the legal entity.

**Stop Payments:** You must make any stop-payment order in the manner required by law, and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. To be effective, your stop-payment order must precisely identify the number, date and amount of the item, and the payee. You may stop payment on any item drawn on your account whether you sign the item or not, if you have an equal or greater right to withdraw from this account than the person who signed the item. A release of the stop-payment request may be made only by the person who initiated the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the

next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**Telephone Transfers:** A telephone transfer of funds from this account to another account with us, if otherwise arranged for or permitted, may be made by the same persons and under the same conditions generally applicable to withdrawals made in writing. Unless a different limitation is disclosed in writing, we restrict the number of transfers from a savings account to another account or to third parties, to a maximum of six per month (less the number of "preauthorized transfers" during the month). Other account transfer restrictions may be described elsewhere.

**Amendments and Termination:** We may change any term of this agreement. Rules governing changes in interest rates are provided separately. For other changes, we will give you reasonable notice in writing or by any other method permitted by law.

We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Notice from us to any one of you is notice to all of you.

**Statements:** You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you. You further agree that if you fail to report any unauthorized signatures, alterations, forgeries, or any other errors in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

**Account Transfer:** This account may not be transferred or assigned without our prior written consent.

**Direct Deposits:** If, in connection with a direct deposit plan, we deposit any amount in an account which should have been returned to the Federal Government for any reason, you authorize us to deduct the amount of our liability to the Federal Government from the account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**Temporary Account Agreement:** If this option is selected, this is a temporary account agreement. Each person who signs in the space designated for signatures on the signature card (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**Setoff:** We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt you owe us now or in the future, by any of you having the right of withdrawal, to the extent of such persons' or legal entity's right to withdraw. If the debt arises from a note, "any due and payable debt" includes the total amount of which we are entitled to demand payment under the terms of the note at the time we set off, including any balance the due date for which we properly accelerate under the note.

This right of setoff does not apply to this account if: (a) it is an IRA or other tax-deferred retirement account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), (c) the debtor's right of withdrawal only arises in a representative capacity, or (d) the debt is created by a home equity loan. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**Restrictive Legends:** We are not required to honor any restrictive legend on checks you write unless we have agreed in writing to the restriction. Examples of restrictive legends are "must be presented within 90 days" or "not valid for more than $1,000.00."

**Payment Order of Items:** The law permits us to pay items (such as checks or drafts) drawn on your account in any order. To assist

3

you in handling your account with us, we are providing you with the following information regarding how we process the items that you write. When processing items drawn on your account, our policy is to pay them according to the dollar amount. We pay the largest items first. The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. Our payment policy will cause your largest, and perhaps more important, items to be paid first (such as your rent or mortgage payment), but may increase the overdraft or NSF fees you have to pay if funds are not available to pay all of the items. If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF). The amounts of the overdraft and NSF fees are disclosed elsewhere. We encourage you to make careful records and practice good account management. This will help you to avoid writing checks or drafts without sufficient funds and incurring the resulting fees.

**ACH and Wire Transfers:** This agreement is subject to Article 4A of the Uniform Commercial Code - Fund Transfers as adopted in the state in which you have your account with us. If you originate a fund transfer for which Fedwire is used, and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. If we receive a credit to an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

**Subaccount Organization:** We have organized your account in a nontraditional way. Your account consists of two subaccounts. One of these accounts is a transaction subaccount (e.g., a checking subaccount). You will transact business on this subaccount. The other is a nontransaction subaccount (e.g., a savings account). You cannot directly access the nontransaction subaccount, but you agree that we may automatically, and without a specific request from you, initiate individual transfers of funds between subaccounts from time to time at no cost to you. This account organization will not change the amount of federal deposit insurance available to you, your available balance, the information on your periodic statements, or the interest calculation, if this is an interest-bearing account. You will not see any difference between the way your account operates and the way a traditionally organized account operates, but this reorganization makes us more efficient and helps us keep costs down.

## NOTICE OF NEGATIVE INFORMATION

Federal law requires us to provide the following notice to customers before any "negative information" may be furnished to a nationwide consumer reporting agency. "Negative Information" includes information concerning delinquencies, overdrafts or any form of default. This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement. After providing this notice, additional negative information may be submitted without providing another notice.

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## ELECTRONIC FUND TRANSFERS YOUR RIGHTS AND RESPONSIBILITIES

Indicated below are types of Electronic Fund Transfers we are capable of handling, some of which may not apply to your account. Please read this disclosure carefully because it tells you your rights and obligations for the transactions listed. You should keep this notice for future reference.

**Electronic Fund Transfers Initiated By Third Parties:** You may authorize a third party to initiate electronic fund transfers between your account and the third party's account.

These transfers to make or receive payment may be one-time occurrences or may recur as directed by you. These transfers may use the Automated Clearing House (ACH) or other payments network. Your authorization to the third party to make these transfers can occur in a number of ways. For example, your authorization to convert a check to an electronic fund transfer or to electronically pay a returned check charge can occur when a merchant provides you with notice and you go forward with the transaction (typically,

at the point of purchase, a merchant will post a sign and print the notice on a receipt). In all cases, these third party transfers will require you to provide the third party with your account number and bank information. This information can be found on your check as well as on a deposit or withdrawal slip. Thus, you should only provide your bank and account information (whether over the phone, the Internet, or via some other method) to trusted third parties whom you have authorized to initiate these electronic fund transfers. Examples of these transfers include, but are not limited to:

- **Preauthorized credits:** You may make arrangements for certain direct deposits to be accepted into your checking or savings account(s).
- **Preauthorized payments:** You may make arrangements to pay certain recurring bills from your checking or savings account(s).
- **Electronic check conversion:** You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to pay for purchases or pay bills.
- **Electronic returned check charge:** You may authorize a merchant or other payee to initiate an electronic funds transfer to collect a charge in the event a check is returned for insufficient funds.

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to savings accounts.

**FASTLINE Telephone Transfers—Types of Transfers:** You may access your account by telephone 24 hours a day using your personal identification number, a much tone phone, and your account numbers, to:
- Transfer funds from checking to checking
- Transfer funds from checking to savings
- Transfer funds from savings to checking
- Transfer funds from savings to savings
- Make payments from checking to loan accounts with us
- Make payments from savings to loan accounts with us
- Get information about:
  - The account balance of checking account(s)
  - Deposits to checking accounts
  - Withdrawals from checking accounts
  - The account balance of savings account(s)
  - Deposits to savings accounts
  - Withdrawals from savings accounts

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to telephone transfers.

**ATM Transfers—Types of Transfers and Dollar Limitations:** You may access your account(s) by ATM using your ATM Card and personal identification number or Debit Card and personal identification number, to:
- Make deposits to checking account(s)
- Make deposits to savings account(s)
- Get cash withdrawals from checking account(s)
  - You may withdraw no more than $500.00 per day
- Get cash withdrawals from savings account(s)
  - You may withdraw no more than $500.00 per day
- Transfer funds from savings to checking account(s)
- Transfer funds from checking to savings account(s)
- Make payments from checking or savings account(s) to loan accounts with us
- Get information about:
  - The account balance of your checking account(s)
  - The account balance of your savings account(s)

Some of these services may not be available at all terminals. Please also see Limitations on Frequency of Transfers section regarding limitations that apply to ATM transfers.

**Types of ATM Card Point-of-Sale Transactions:** You may access your checking or savings account(s) to purchase goods (in person), pay for services (in person), and get cash from a merchant, if the merchant permits, or from a participating financial institution.

**Point-of-Sale Transactions—Dollar Limitations:** Using your card:
- You may not exceed $500.00 in transactions per day, in combination with ATM withdrawals

**Types of Debit Card Point-of-Sale Transactions:** You may access your checking account(s) to purchase goods (in person, online, or by phone), pay for services (in person, online, or by phone), get cash from a merchant, if the merchant permits, or from a participating financial institution, and do anything that a participating merchant will accept.

**Point-of-Sale Transactions—Dollar Limitations:** Using your card:
- You may not exceed $200.00 in transactions per day (if your account has been opened for less than one year) or $1,000.00 per day (if your account has been opened for one year or more)

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to debit card transactions.

**Currency Conversion and Cross-Border Transaction Fees:** If you effect a transaction with your MasterCard® branded Debit Card in a currency other than US Dollars, MasterCard will convert the charge into a US Dollar amount. MasterCard's currency conversion procedure includes use of either a government-mandated exchange rate, or a wholesale exchange rate selected by MasterCard. The exchange rate MasterCard uses will be a rate in effect on the day the transaction is processed. This rate may differ from the rate in effect on the date of purchase or the date the transaction was posted to your account.

MasterCard charges us a Currency Conversion Assessment of 20 basis points (.2% of the transaction) for performing the currency conversion. In addition, MasterCard charges us an Issuer Cross-Border Assessment of 80 basis points (.8% of the transaction) on all cross-border transactions regardless of whether there is a currency conversion. As a result, we charge you a Currency Conversion fee of .2% and a Cross-Border Transaction fee of .8%. The Cross-Border Transaction fee is charged on all cross-border transactions regardless of whether there is a currency conversion. A cross-border transaction is a transaction processed through the Global Clearing Management System or the MasterCard Debit Switch in which the country of the merchant is different than the country of the cardholder.

**Advisory Against Illegal Use:** You agree not to use your card(s) for illegal gambling or other illegal purpose. Display of a payment card logo by, for example, an online merchant does not necessarily mean that transactions are lawful in all jurisdictions in which the cardholder may be located. Please see your cardholder agreement for additional information relating to the use of your Debit Card.

**Internet Banking Computer Transfers—Types of Transfers and Charges:** You may access your account(s) by computer through the Internet by logging onto our website at www.prosperitybankx.com and using your user identification and your password, to:
- Transfer funds from checking to checking
- Transfer funds from checking to savings
- Transfer funds from savings to checking
- Transfer funds from savings to savings
- Make payments from checking to loan account(s) with us
- Make payments from checking to third parties (Bill Pay)
  - Refer to the fee schedule in our separate Internet Banking Agreement for applicable charges
- Make payments from savings to loan account(s) with us
- Get information about:
  - The account balance of checking account(s)
  - Deposits to checking accounts
  - Withdrawals from checking accounts
  - The account balance of savings account(s)
  - Deposits to savings accounts
  - Withdrawals from savings accounts
- View statements
- View check images

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to computer transfers.

**Limitations on Frequency of Transfers:** In addition to those limitations on transfers elsewhere described, if any, the following limitations apply:
- Transfers from a money market to another account or to third parties by check, draft, debit card, or similar order payable to third parties or preauthorized, automatic or telephone transfers to six (6) per monthly cycle.
- Transfers from a savings account to another account or to third parties by check, draft, debit card, or similar order payable to third parties or preauthorized, automatic, or telephone transfers to six (6) per monthly cycle.

**Fees:**
- We do not charge for direct deposits to any type of account.
- We do not charge for preauthorized payments from any type of account. Except as indicated elsewhere, we do not charge for these electronic fund transfers.

**ATM Operator/Network Fees:** When you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

**Documentation:**
- **Terminal transfers:** You can get a receipt at the time you make a transfer to or from your account using an automated teller machine or point-of-sale terminal. However, you may not get a receipt if the amount of the transfer is $15 or less.
- **Preauthorized credits:** If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you can call us at (979) 578-8181 to find out whether or not the deposit has been made.

- **Periodic statements.**
You will get a monthly account statement from us for your checking account.

You will get a monthly account statement from us for your savings accounts, unless there are no transfers in a particular month. In any case, you will get a statement at least quarterly.

**Preauthorized Payments**

- **Right to stop payment and procedure for doing so:** If you have told us in advance to make regular payments out of your account, you can stop any of these payments. Here is how:
  - Call or write us at the telephone number or address listed in this brochure in time for us to receive your request 3 business days or more before the payment is scheduled to be made. If you call, we may also require you to put your request in writing and get it to us within 14 days after you call.
  - Please refer to our separate fee schedule for the amount we will charge you for each stop-payment order you give.
- **Notice of varying amounts:** If these regular payments may vary in amount, the person we are going to pay will tell you 10 days before each payment when it will be made and how much it will be. (You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.)
- **Liability for failure to stop payment of preauthorized transfer:** If you order us to stop one of these payments 3 business days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses or damages.

**Financial Institution's Liability—Liability for failure to make transfers:** If we do not complete a transfer to or from your account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance:

(1) If, through no fault of ours, you do not have enough money in your account to make the transfer.

(2) If you have an overdraft line and the transfer would go over the credit limit.

(3) If the automated teller machine where you are making the transfer does not have enough cash.

(4) If the terminal or system was not working properly and you knew about the breakdown when you started the transfer.

(5) If circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that we have taken.

(6) There may be other exceptions stated in our agreement with you.

**Confidentiality:** We will disclose information to third parties about your account or the transfers you make.

(1) Where it is necessary for completing transfers;

(2) In order to verify the existence and condition of your account for a third party, such as a credit bureau or merchant;

(3) In order to comply with government agency or court orders;

(4) As explained in the Privacy Disclosure contained elsewhere in this document.

**Unauthorized Transfers**

(a) **Consumer Liability:**

- **Generally.** Tell us AT ONCE if you believe your card and/or code has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your maximum overdraft line of credit). If you tell us within 2 business days after you learn of the loss or theft of your card and/or code, you can lose no more than $50 if someone used your card and/or code without your permission.

If you do NOT tell us within 2 business days after you learn of the loss or theft of your card and/or code, and we can prove we could have stopped someone from using your card and/or code without your permission if you had told us, you could lose as much as $500.

Also, if your statement shows transfers that you did not make, including those made by card, code or other means, tell us at once. If you do not tell us within 60 days after the statement was mailed to you, you may not get back any money you lost after the 60 days if we can prove that we could have stopped someone from taking the money if you had told us in time.

If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time periods.

- **Additional Limits on Liability for MasterCard® branded Debit Card,** when used for point-of-sale transactions. You will not be liable for any unauthorized transactions using your MasterCard®-branded Debit Card, when used for point-of-sale transactions, if: (i) you can demonstrate that you have exercised reasonable care in safeguarding your card from the risk of loss or theft, (ii) you have not reported to us two or more incidents of unauthorized use within the prior twelve-month period, and (iii) your account is in good standing. If

any of these conditions are not met, your liability is the lesser of $50 or the amount of money, property, labor, or services obtained by the unauthorized use before notification to us. "Unauthorized use" means the use of your debit card by a person, other than you, who does not have actual, implied, or apparent authority for such use, and from which you receive no benefit. This additional limitation on liability does not apply to PIN-based transactions or transactions not processed by MasterCard.

(b) **Contact in Event of Unauthorized Transfer:** If you believe your card and/or code has been lost or stolen, call or write us at the telephone number or address listed in this brochure. You should also call the number or write to the address listed in this brochure if you believe a transfer has been made using the information from your check without your permission.

**Error Resolution Notices:** In case of errors or questions about your electronic transfers, call or write us at the telephone number or address listed in this brochure, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.

(1) Tell us your name and account number (if any).

(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

(3) Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days.

We will determine whether an error occurred within 10 business days (20 business days if the transfer involved a new account) after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days (90 days if the transfer involved a new account, a point-of-sale transaction, or a foreign-initiated transfer) to investigate your complaint or question. If we decide to do this, we will credit your account within 10 business days (20 business days if the transfer involved a new account) for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not credit your account. Your account is considered a new account for the first 30 days after the first deposit is made, unless each of you already has an established account with us before this account is opened.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation.

You may ask for copies of the documents that we used in our investigation by contacting us at:

Prosperity Bank, 1301 N. Mechanic St., El Campo, TX 77437
Business Days: Monday through Friday
Excluding Federal Holidays
Phone: (979) 578-8181
More Detailed Information is Available on Request.

**Notice of ATM/Night Deposit Facility User Precautions:** As with all financial transactions, please exercise discretion when using an automated teller machine (ATM) or night deposit facility. For your own safety, be careful.

The following suggestions may be helpful:

1. Prepare for your transactions at home (for instance, by filling out a deposit slip) to minimize your time at the ATM or night deposit facility.

2. Mark each transaction in your account record, but not while at the ATM or night deposit facility. Always save your ATM receipts. Don't leave them at the ATM or night deposit facility because they may contain important account information.

3. Compare your records with the account statements or account histories that you receive.

4. Don't lend your ATM card to anyone.

5. Remember, do not leave your card at the ATM. Do not leave any documents at a night deposit facility.

6. Protect the secrecy of your Personal Identification Number (PIN). Protect your ATM card as though it were cash. Don't tell anyone your PIN. Don't give anyone information regarding your ATM card or PIN over the telephone. Never enter your PIN in any ATM that does not look genuine, has been modified, has a suspicious device attached, or is operating in a suspicious manner. Don't write your PIN where it can be discovered. For example, don't keep a note of your PIN in your wallet or purse.

7. Prevent others from seeing you enter your PIN by using your body to shield their view.

8. If you lose your ATM card or if it is stolen, promptly notify us. You should consult the other disclosures you have received about electronic fund transfers for additional information about what to do if your card is lost or stolen.

9. When you make a transaction, be aware of your surroundings. Look out for suspicious activity near the ATM or night deposit facility, particularly if it is after sunset. At night, be sure that the

facility (including the parking area and walkways) is well lighted. Consider having someone accompany you when you use the facility, especially after sunset. If you observe any problem, go to another ATM or night deposit facility.

10. Don't accept assistance from anyone you don't know when using an ATM or night deposit facility.

11. If you notice anything suspicious or if any other problem arises after you have begun an ATM transaction, you may want to cancel the transaction, pocket your card and leave. You might consider using another ATM or coming back later.

12. Don't display your cash; pocket it as soon as the ATM transaction is completed and count the cash later when you are in the safety of your own car, home, or other secure surrounding.

13. At a drive-up facility, make sure all the car doors are locked and all of the windows are rolled up, except the driver's window. Keep the engine running and remain alert to your surroundings.

14. We want the ATM and night deposit facility to be safe and convenient for you. Therefore, please tell us if you know of any problem with a facility. For instance, let us know if a light is not working, or there is any damage to a facility. Please report any suspicious activity or crimes to both the operator of the facility and the local law enforcement officials immediately.

## YOUR ABILITY TO WITHDRAW FUNDS

This policy statement applies to "transaction" accounts. Transaction accounts, in general, are accounts which permit an unlimited number of payments to third persons and an unlimited number of telephone and preauthorized transfers to other accounts of yours with us. Checking accounts are the most common transaction accounts. Feel free to ask us whether any of your other accounts might also be under this policy.

Our policy is to delay the availability of funds from your cash and check deposits. During the delay, you may not withdraw the funds in cash and we will not use the funds to pay checks that you have written.

Please remember that even after we have made funds available to you, and you have withdrawn the funds, you are still responsible for checks you deposit that are returned to us unpaid and for any other problems involving your deposit.

**Funds Availability Policy:** The information describes our policy for holding deposited items in a transaction account before funds are made available to you for withdrawal. This is what is called our Funds Availability Policy.

For purposes of this disclosure, the terms "you" and "your" refer to the customer and the terms "our", "we", and "us," refer to the Bank.

Generally, transaction accounts are accounts which would permit an unlimited number of payments by check to third persons, and also an unlimited number of telephonic and preauthorized transfers to third persons or other accounts you may have with us.

**Determining the Availability of Your Deposit:** The length of the delay varies depending on the type of deposit and is explained below. When we delay your ability to withdraw funds from a deposit, you may not withdraw the funds in cash, and we will not pay checks you have written on your account by using these funds. Even after we have made funds available to you and you have withdrawn the funds, you are still responsible for checks you deposit that are returned to us unpaid and for any other problems involving your deposit.

When we delay your ability to withdraw funds, the length of the delay is counted in Business Days from the day of your deposit. The terms "Business Day" means any day other than a Saturday, Sunday or federally declared legal holiday, and the term "Banking Day" means that part of any Business Day on which we are open to the public for carrying on substantially all of our banking functions.

If you make a deposit before 4:00 pm on a Business Day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after 4:00 pm or on a day that we are not open, we will consider the deposit made on the next Business Day we are open.

**Availability Schedule:**

**Same Day Availability:** Funds from electronic direct deposit to your account will be available on the day we receive the deposit.

**Next Day Availability:** Funds from the following deposits are available on the first business day after the day of your deposit: (a) U.S. Treasury checks that are payable to you; (b) wire transfer, including preauthorized credits, such as social security benefits and payroll payments; and (c) checks drawn on us.

In addition, if you make the following deposits in person to one of our employees, these deposits will also be available on the first business day after the day of your deposit: (a) cash; (b) state and local government checks that are payable to you; (c) cashier's, certified and teller's checks that are payable to you; and (d) Federal Reserve Bank checks, Federal Home Loan Bank checks and postal money orders, if these items are payable to you. If you do not make your deposit in person to one of our employees (for example, if you mail the depos-

in), funds from these deposits will be available on the second business day after the day of your deposit.

Local Checks. The delay for check deposits other than those indicated above depends on if the check is a local check. To determine if a check is a local check, look at the routing number on the check. If the first four digits of the routing number are listed below, then the check is a local check:

0110, 0111, 0112, 0113, 0114, 0115, 0116, 0117, 0118, 0119, 0210, 0211, 0212, 0213, 0214, 0215, 0216, 0219, 0220, 0223, 0260, 0280, 0310, 0311, 0312, 0313, 0319, 0360, 0410, 0412, 0420, 0421, 0422, 0423, 0430, 0432, 0433, 0434, 0440, 0441, 0442, 0510, 0514, 0515, 0519, 0520, 0521, 0522, 0530, 0531, 0532, 0539, 0540, 0550, 0560, 0570, 0610, 0611, 0612, 0613, 0620, 0621, 0622, 0630, 0631, 0632, 0640, 0641, 0642, 0650, 0651, 0652, 0653, 0654, 0655, 0660, 0670, 0710, 0711, 0712, 0719, 0720, 0724, 0730, 0739, 0740, 0749, 0750, 0759, 0810, 0812, 0813, 0815, 0819, 0820, 0829, 0830, 0839, 0840, 0841, 0842, 0843, 0863, 0865, 0910, 0911, 0912, 0913, 0914, 0915, 0918, 0919, 0920, 0921, 0929, 0960, 1010, 1011, 1012, 1019, 1020, 1021, 1022, 1023, 1030, 1031, 1039, 1040, 1041, 1049, 1070, 1110, 1111, 1113, 1119, 1120, 1122, 1123, 1130, 1131, 1140, 1149, 1163, 1210, 1211, 1212, 1213, 1220, 1221, 1222, 1223, 1224, 1230, 1231, 1232, 1233, 1240, 1241, 1242, 1243, 1250, 1251, 1252, 2110, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2210, 2211, 2212, 2213, 2214, 2215, 2216, 2219, 2220, 2223, 2260, 2280, 2310, 2311, 2312, 2313, 2319, 2360, 2410, 2412, 2420, 2421, 2422, 2423, 2430, 2432, 2433, 2434, 2440, 2441, 2442, 2510, 2514, 2515, 2519, 2520, 2521, 2522, 2530, 2531, 2532, 2539, 2540, 2550, 2560, 2570, 2610, 2611, 2612, 2613, 2620, 2621, 2622, 2630, 2631, 2632, 2640, 2641, 2642, 2650, 2651, 2652, 2653, 2654, 2655, 2660, 2670, 2710, 2711, 2712, 2719, 2720, 2724, 2730, 2739, 2740, 2749, 2750, 2759, 2810, 2812, 2813, 2815, 2819, 2820, 2825, 2830, 2839, 2840, 2841, 2842, 2843, 2863, 2865, 2910, 2911, 2912, 2913, 2914, 2915, 2918, 2919, 2920, 2921, 2929, 2960, 3010, 3011, 3012, 3019, 3020, 3021, 3022, 3023, 3030, 3031, 3039, 3040, 3041, 3049, 3070, 3110, 3111, 3113, 3119, 3120, 3122, 3123, 3130, 3131, 3140, 3149, 3163, 3210, 3211, 3212, 3213, 3220, 3221, 3222, 3223, 3224, 3230, 3231, 3232, 3233, 3240, 3241, 3242, 3243, 3250, 3251, 3252.

Some checks are marked "payable through" and have a four-or nine-digit number nearby. For these checks, use the four-digit number (or the first four digits of the nine-digit number) not the routing number on the bottom of the check, to determine if these checks are local.

The first $100.00 from a deposit of local checks will be available on the first business day after the banking day of deposit. The remaining funds will be available on the second business day after the day of your deposit.

For example, if you deposit a local check of $700.00 on a Monday, $100.00 of the deposit is available on Tuesday. The remaining $600.00 is available on Wednesday.

Holds on Other Funds for Check Cashing: If we cash a check for you that is drawn on another financial institution, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it.

Holds on Other Funds in Another Account: If we accept for deposit a check that is drawn on another financial institution, we may make funds from the deposit available for withdrawal immediately but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this disclosure for the type of check that you deposited.

Longer Delays May Apply: Funds you deposit by check may be delayed for a longer period under the following circumstances: (a) if we believe a check you deposit will not be paid; (b) if you deposit checks totaling more than $5,000 on any one day; (c) if you redeposit a check that has been returned unpaid; (d) if you have overdrawn your account repeatedly in the last six months; or (e) if an emergency condition arises that would not enable us to make the funds available to you, such as the failure of computer or communications equipment.

We will notify you if we delay your availability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

Special Rules for New Accounts: If you are a new customer, the following special rules will apply during the first 30 days your account is opened.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $5,000 of a day's total deposits of

cashier's, certified, seller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of deposit if the deposit meets certain conditions. For example, the checks must be payable to you (and you may have to use a special deposit slip). The excess over $5,000 will be available on the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of deposit.

Funds from all other check deposits will be available on the seventh business day after the day of your deposit.

Deposits at Automated Teller Machines: We only allow deposits to be made at ATMs that we own or operate. All ATMs that we own or operate are identified as our machines.

## SUBSTITUTE CHECKS AND YOUR RIGHTS

As our customer we think it's important for you to know about substitute checks. The following Substitute Check Disclosure provides information about substitute checks and your rights.

What is a substitute check? To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

What are my rights regarding substitute checks? In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

How do I make a claim for a refund? If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at:

Prosperity Bank
1301 N. Mechanic St
El Campo, TX 77437
(979) 578-8181

You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include —
- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check or the following information to help us identify the substitute check: the check number, the amount of the check, the date of the check, and the name of the person to whom you wrote the check.

171G218-020
©2000 Wolters Kluwer Financial Services — Bankers Systems™
Form AIB-P 9/4/2001 TCM-53q,9a,3n, Custom 2aw

## BANKING CENTERS

### HOUSTON AREA

Allen Parkway
2727 Allen Pkwy
Ste. PL01
Houston, TX 77019
713-522-7881

Beltway
9155 W. Sam Houston Pkwy
Houston, TX 77064
281-970-9636

Champions/Gladebrook
4201 FM 1960 W. #100
Houston, TX 77068
281-902-1700

Cinco Ranch
23501 Cinco Ranch Blvd. K100
Katy, TX 77494
281-391-2330

First Colony/Sugar Land
1735 Lake Pointe Pkwy
Sugar Land, TX 77478
281-902-1750

Northside
2402 N. Main
Houston, TX 77009
713-226-5300

Piney Point
8820 Westheimer
Houston, TX 77063
713-954-2418

Post Oak/Uptown
777 Post Oak Blvd #150
Houston, TX 77056
281-902-1630

Royal Oaks
12000 Westheimer Rd. #100
Houston, TX 77077
281-940-0170

Shadow Creek Ranch
11451 Broadway
Pearland, TX 77584
713-340-0652

West University
4065 Bellaire Blvd.
Houston, TX 77025
281-902-1650

### DALLAS AREA

Abrams Centre
11919 Abrams Rd.
Dallas, TX 75243
214-342-5200

East Renner
4251 E. Renner Rd. #100
Richardson, TX 75082
972-907-1222

Independence
8901 Independence Pkwy
Plano, TX 75025
972-377-7380

McKinney
321 N. Central Expy
McKinney, TX 75070
972-548-4000

McKinney-Stonebridge
6200 W. Eldorado Pkwy
McKinney, TX 75070
972-548-1367

Midway
2012 Midway Rd.
Plano, TX 75093
972-473-9000

Preston Forest
5919 Forest Lane
Dallas, TX 75230
972-661-0399

Sachse
6600 Murphy Rd.
Sachse, TX 75048
972-530-7999

For a complete list of locations throughout Texas, please visit us on the web: www.prosperitybanktx. com/locations.aspx

40



# PROSPERITY BANK®

Important Information Regarding FDIC Insurance Coverage . . . 1

FASTLINE Guide . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Schedule of Fees . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Notice of Your Financial Privacy Rights . . . . . . . . . . . . . 2

Terms and Conditions of Your Account . . . . . . . . . . . . . . 3

Notice of Negative Information . . . . . . . . . . . . . . . . . . 4

Electronic Fund Transfers: Your Rights and Responsibilities . . . 4

Your Ability to Withdraw Funds . . . . . . . . . . . . . . . . . . 5

Substitute Checks and Your Rights . . . . . . . . . . . . . . . . 6

Banking Centers . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## IMPORTANT INFORMATION REGARDING FDIC INSURANCE COVERAGE

FDIC General Deposit Insurance: The standard insurance amount currently is $250,000 per depositor. The $250,000 limit is permanent for certain retirement accounts (includes IRAs) and is temporary for all other deposit accounts through December 31, 2013. On January 1, 2014, the standard insurance amount will return to $100,000 per depositor for all deposit accounts except certain retirement accounts, which will remain at $250,000 per depositor. The FDIC provides separate coverage for deposits held in different account ownership categories. Depositors may qualify for more coverage if they have funds in different ownership categories and all FDIC requirements are met. (For details on the requirements, go to www.fdic.gov/deposit/deposits.)

TAG Program: Additionally, Prosperity Bank is participating in the FDIC Transaction Account Guarantee Program. Under that program, through June 30, 2010, all non-interest-bearing transaction accounts are fully guaranteed by the FDIC for the entire amount in the account. Non-interest-bearing checking accounts include Demand Deposit Accounts (DDAs) and any transaction account that has unlimited withdrawals and that cannot earn interest. Also included are low-interest NOW accounts (NOW accounts that cannot earn more than 0.50% interest) and IOLTA accounts. Coverage under the Transaction Account Guarantee Program is in addition to and separate from the coverage available under the FDIC general deposit insurance rules. If funds in a non-interest-bearing transaction account are swept or transferred to an interest-bearing or non-deposit account, those swept or transferred funds are no longer eligible for the full guarantee provided under the Transaction Account Guarantee Program and the basic deposit insurance limit applies.

Supplemental Coverage for Bank Mergers: When two or more insured banks merge, deposits from the assumed bank are separately insured from deposits at the assuming bank for at least six months after the merger. This grace period gives a depositor the opportunity to restructure his or her accounts, if necessary. CDs from the assumed bank are separately insured until the earliest maturity date after the end of the six-month grace period. CDs that mature during the six-month period and are renewed for the same term and in the same dollar amount (either with or without accrued interest) continue to be separately insured until the first maturity date after the six-month period. If a CD matures during the six-month grace period and is renewed on any other basis, it would be separately insured only until the end of the six-month grace period.

## FASTLINE GUIDE

With FASTLINE, you may access your account by telephone 24 hours a day. To find your local FASTLINE number, please visit us on the web at www.prosperitybanktx.com/fastline.aspx or call your local banking center.

For your protection, we use the last 4 digits of your social security numbers for positive identification when first using the FASTLINE service. For added security, you will be prompted to choose your own private, 4-10 digit PIN to use for all subsequent transactions. We suggest you choose a number or word that is easy to remember. You will not enter your PIN number until you have selected the type of information you wish and have entered your account number.

Please have your account numbers ready. Upon entering the FASTLINE system, you will be prompted as follows:

1. To continue in English press 1, or stay on the line to continue in Spanish.
2. Press 1 for "Account Information"; Press 2 for "Funds Transfer".

Accounts Information Menu
- Press 1 for Checking
- Press 2 for Savings
- Press 3 for CD
- Press 4 for IRA
- Press 5 for Loans

- Checking Menu
  - Press 1 for Withdrawal (Debit and Check Information)
  - Press 2 for Deposit Information
  - Press 3 for Funds Transfer (and Loan Payments)
  - Press 4 to Find Transactions (by check number or amount)
  - Press 5 for More Options (Balance, Interest, Change PIN)

- Savings Menu (prompts are same as Checking Menu)

- CD Menu
  - Press 1 for Balance
  - Press 2 for Interest Information
  - Press 3 to Change PIN

- IRA Menu (prompts are same as CD Menu)

- Loans Menu
  - Press 1 for Advances
  - Press 2 for Payments
  - Press 3 for Find Transactions (search for Advances or Payments by amount)
  - Press 4 for More Options (Balance, Interest, Change PIN)

Funds Transfer Menu
- Prompt for Type to Transfer From:
  - Press 1 to transfer From Checking
  - Press 2 to transfer From Savings
- Enter the From account number, followed by your PIN if prompted.
- Prompt for Type to Transfer To:
  - Press 1 to transfer To Checking
  - Press 2 to transfer To Savings
  - Press 3 to transfer To Loans

Other notes about using FASTLINE:
- Pressing the * key returns you to the previous menu.
- Pressing the # key takes you to the main menu.
- When listening to transaction history, you can press 7 to play the previous transaction, 8 to repeat the current transaction, or 9 to skip to the next transaction.

REV TLH 02/23/10 S:\Public Information\Operations Forms and Procedures\Fastline\Fastline Guide - Fastline.doc

## SCHEDULE OF FEES

The following fees may be assessed against your account and the following transaction limitations, if any, apply to your account.

ATM/Debit Transactions off premises . . . . . . . . . . . . . . . . . . . $1.00
ATM Card . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1.00 monthly service charge
MasterCard ATM/Debit Card . . . . . . . . . . . . . . $1.50 monthly service charge
Or MasterCard ATM/Debit Card . . . . . . . . . . . . $12.00 annual service charge
Replace lost ATM or Debit Card . . . . . . . . . . . . . . . . . . . . . . . $5.00
Change personal identification number (PIN for ATM or Debit card) . . . . . $5.00
*See Special Note Regarding ATM/Debit Withdrawal Surcharge Fees.
Money Orders, Customer, each . . . . . . . . . . . . . . . . . . . . . . . . $3.00
Money Orders, Non Customers, each . . . . . . . . . . . . . . . . . . . . . $6.00
Cashier's Check, Customer, each . . . . . . . . . . . . . . . . . . . . . . . $5.00
Cashier's Check, Non Customer, each . . . . . . . . . . . . . . . . . . . . $10.00
Check Printing . . . . . . . . . . . . . . . . (Fee depends on style of check ordered)
Temporary Check Fee . . . . . . . . . . . . . . . . . . . . . . $2.00 per 10 checks
Account closed within 90 days of opening . . . . . . . . . . . . . . . . . . $25.00
Overdraft Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $5.00
Deposited Item Return, charge on checks returned or
ACH transaction returned by the Federal Reserve . . . . . . . . . . . . . . $5.00
Nonsufficient funds "Return Check Charge" . . . . . . . . . . . . $32.00 each item
Nonsufficient funds "Overdraft Charge" . . . . . . . . . . . . . $32.00 each item
Account Inquiry Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2.00
Telephone Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2.00
Stop Payment . . . . . . . . . . . . . . . . . . . . . . . . . $25.00 each request
Hold Mail Request, monthly . . . . . . . . . . . . . . . . . . . . . . . . . $2.50
Duplicate (Copy) Statement, monthly . . . . . . . . . . . . . . . . . . . . . $5.00
Return Mail, monthly . . . . . . . . . . . . . . . . . . . . . . . . . . . . $10.00
Exception Items -- Excessive MICR Rejects
(>1% POD Items Processed monthly) . . . . . . . . . . . . . . . $0.15 each item
Exception Items -- Excessive MICR Rejects (>1% Deposited Items) . $0.15 each item
Deposit Correction (1st item in cycle at no charge) . . . . . . $3.50 each correction
Statement Printout . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3.00
Special Statement Cut Off Fee . . . . . . . . . . . . . . . . . . . . . . . . $5.00
Account Research . . . . . . . . . . . . . . . . . . . . . . . . . $25.00 per hour
Account Balancing Assistance . . . . . . . . . . . . . . . . . . . $25.00 per hour
Film/Image Copies, each . . . . . . . . . . . . . . . . . . . . . . . . . . . $3.00
Photocopies, Customer, each . . . . . . . . . . . . . . . . . . . . . . . . . $0.50
Photocopies, Non Customer, each . . . . . . . . . . . . . . . . . . . . . . . $1.00
Fax, Outgoing . . . . . . . . . . . $3.00 first page, $1.00 each additional page
Fax, Incoming . . . . . . . . . . . $2.00 first page, $1.00 each additional page
Wire Transfers-US Dollar, Customer, each . . . . . . . . . . . . . . . . . . $15.00
Wire Transfers-US Dollar, Non Customer, each . . . . . . . . . . . . . . . . $25.00
Wire Transfer-Foreign Currency, Customer, each . . . . . . . . . $40.00 plus cost
Wire Transfer-Foreign Currency, Non Customer, each . . . . . . . $50.00 plus cost
Wire Fax Notification, each . . . . . . . . . . . . . . . . . . . . . . . . . $2.00
Collections, Customer . . . . . . . . . . . . . . . . . . . . . . . . . . . . $10.00
Collections, Non Customer . . . . . . . . . . . . . . . . . . . . . . . . . . $25.00
Night Depository, Lock Bags . . . . . . . . . . . . . . . . . . . . . . . . . $20.00
Night Depository, Key for Deposit Receptacle . . . . . . . . . . . . . . . . $5.00
Tax Levies, each . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $50.00
Credit Report (loan purpose only) . . . . . . . . . . . . . . . . . . . . . . $5.00
Notary Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $5.00
Security Transactions . . . . . . . . . . . . . . . . . . . . . . . . . . . . $35.00
Collection Notes, Set up . . . . . . . . . . . . . . . . . . . . . . . . . . $20.00
Charge per payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $10.00
Traveler's Checks, One Signature . . . . . . . . . . . . . . 1% of amount purchased
Traveler's Checks, Two Signatures . . . . . . . . . . . . 1.5% of amount purchased
Non Customer Check Cashing . . . . . . 1% of check amount, $5.00 minimum
Safe Deposit Box Rental (where available) -- Safe Deposit Box Annual Rate and Rental Fees vary by Bank location. Contact a Prosperity Bank location in your area for box availability and annual rental fees.
Initial Key Deposit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20.00
Safe Deposit Box Drilling . . . . . . . . . . . . . . . $25.00 plus vendor's charge
Replacement of Lost Key . . . . . . . . . . . . . . . . . . . . . . . . . . . $10.00
Customer assumes all cost of drilling of box and key replacement.

*Special Note Regarding ATM/Debit Card Withdrawals and Other Banks' Surcharge Fees: Non-Prosperity Bank ATM machines may charge you a surcharge fee to use that machine. This is not a Prosperity Bank fee, but instead, the other bank's or vendor's fee. With the expanded network of Prosperity Bank ATM machines available, any refunds, reversals, or waivers of the surcharge fee as previously provided by First Bank will be discontinued effective close of business April 30, 2010.

Overdraft Items: When you write a check, withdraw money from an ATM or use your Debit card to make a purchase, or any other withdrawal request made for more than the available balance in your checking account, at our discretion, Prosperity Bank may pay the item and overdraw your account. An Overdraft Charge per item will be assessed for each item paid into the overdraft at a rate disclosed in the Prosperity Bank Schedule of Fees. Prosperity Bank is not obligated to pay any item presented for payment if the account does not contain sufficient collected (available) funds. Any payment by the Bank of a nonsufficient fund check or checks (or other item) does not obligate the Bank to pay any additional or subsequent nonsufficient fund checks or items. Additionally, the Bank is not obligated to provide prior written notice of a decision to refuse to pay any additional nonsufficient check or item.

## NOTICE OF YOUR FINANCIAL PRIVACY RIGHTS

We, our, and us, when used in this notice, mean Prosperity Bank.
This is our privacy notice for our customers. When we use the words "you" and "your" we mean the following types of customers:
- Our consumer customers who have a continuing relationship by purchasing or holding financial products or services such as a:
  - Deposit account
  - Loan account
  - Safe deposit box
  - Self-directed Individual Retirement Account

We will tell you the sources of the information we collect about you. We will tell you what measures we take to secure that information. We first define some terms.

Nonpublic personal information means information about you that we collect in connection with providing a financial product or service to you. Nonpublic personal information does not include information that is available from public sources, such as telephone directories or government records. Hereafter, we will use the term "information" to mean nonpublic personal information as defined in this section.

An affiliate is a company we own or control, a company that owns or controls us, or a company that is owned or controlled by the same company that owns or controls us. Ownership does not mean complete ownership, but means owning enough to have control.

A nonaffiliated third party is a person we do not employ or a company that is not an affiliate of ours. This is also known as nonaffiliated third party, or simply, an "other party."

The Information We Collect: We collect information about you from the following sources:
- Information you give us on applications or other forms
- Information about your transactions with us
- Information about your transactions with other parties
- Information from a consumer reporting agency
- Information we receive as a result of verifying customer information

Information We Disclose About You: We do NOT disclose any information about you to anyone, except as permitted by law. Examples of this might include disclosures necessary to service your account or prevent unauthorized transactions.

The Confidentiality, Security, and Integrity of Your Information: We restrict access to information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards to protect this information.

Information About Former Customers: We do not disclose information about former customers, except as permitted by law.

Texas Notices: This institution is chartered, licensed, or registered under the laws of the State of Texas and by state law is subject to regulatory oversight by the Texas Department of Banking. Any consumer wishing to file a complaint against this institution should contact the Texas Department of Banking through one of the means indicated below:
- In Person or U.S. Mail: 2601 North Lamar Boulevard, Suite 300, Austin, Texas 78705-4294
- Telephone No.: 877/276-5554
- Fax No.: 512/475-1313
- E-mail: consumer.complaints@banking.state.tx.us
- Website: www.banking.state.tx.us

# TERMS AND CONDITIONS
## OF YOUR ACCOUNT

**Agreement:** This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully...

**Liability**

**Deposits**

**Withdrawals**

**Ownership of Account and Beneficiary Designation**

**Single-Party Account Without "P.O.D." (Payable on Death) Designation**

**Single-Party Account With "P.O.D." (Payable on Death) Designation**

**Multiple-Party Account Without Right of Survivorship**

**Multiple-Party Account With Right of Survivorship**

**Multiple-Party Account With Right of Survivorship and "P.O.D." (Payable on Death) Designation**

**Convenience Account**

**Trust Account**

**Business Accounts**

**Stop Payments**

**Telephone Transfers**

**Amendments and Termination**

**Statements**

**Account Transfer**

**Direct Deposits**

**Temporary Account Agreement**

**Setoff**

**Restrictive Legends**

**Payment Order of Items**

97

you in handling your account with us, we are providing you with the following information regarding how we process the items that you write. When processing items drawn on your account, our policy is to pay them according to the dollar amount. We pay the largest items first. The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. Our payment policy will cause your largest, and perhaps more important, items to be paid first (such as your rent or mortgage payment), but may increase the overdraft or NSF fees you have to pay if funds are not available to pay all of the items. If an item is presented without sufficient funds in your account to pay it, we may at our discretion, pay the item (creating an overdraft) or return the item (NSF). The amounts of the overdraft and NSF fees are disclosed elsewhere. We encourage you to make careful records and practice good account management. This will help you to avoid writing checks or drafts without sufficient funds and incurring the resulting fees.

ACH and Wire Transfers: This agreement is subject to Article 4A of the Uniform Commercial Code - Fund Transfers as adopted in the state in which you have our account with us. If you originate a fund transfer for which Fedwire is used, and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. If we receive a credit to an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

Subaccount Organization: We have organized your account in a noninstitutional way. Your account consists of two subdivisions. One of these accounts is a transaction subaccount (e.g. a checking subaccount). You will transact business on this subaccount. The other is a nontransaction subaccount (e.g. a savings account). You cannot directly access the nontransaction subaccount, but you agree that we may automatically, and without a specific request from you, initiate individual transfers of funds between subaccounts from time to time at no cost to you. This account organization will not change the amount of federal deposit insurance available to you, your available balance, the information on your periodic statements, or the interest calculation, if this is an interest-bearing account. You will not see any difference between the way your account operates and the way a traditionally organized account operates, but this organization makes us more efficient and helps to keep costs down.

## NOTICE OF NEGATIVE INFORMATION

Federal law requires us to provide the following notice to customers before any "negative information" may be furnished to a nationwide consumer reporting agency. "Negative information" includes information concerning delinquencies, overdrafts or any form of default. This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement. After providing this notice, additional negative information may be submitted without providing another notice.

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## ELECTRONIC FUND TRANSFERS YOUR RIGHTS AND RESPONSIBILITIES

Indicated below are types of Electronic Fund Transfers we are capable of handling, some of which may not apply to your account. Please read this disclosure carefully because it tells you your rights and obligations for the transactions listed. You should keep this notice for future reference.

Electronic Fund Transfers Initiated By Third Parties. You may authorize a third party to initiate electronic fund transfers between your account and the third party's account.

These transfers to make or receive payment may be one-time occurrences or may recur as directed by you. These transfers may use the Automated Clearing House (ACH) or other payments network. Your authorization to the third party to make these transfers can occur in a number of ways. For example, your authorization to convert a check to an electronic fund transfer or to electronically pay a returned check charge can occur when a merchant provides you with notice and you go forward with the transaction (typically

at the point of purchase, a merchant will post a sign and print the notice on a receipt). In all cases, these third party transfers will require you to provide the third party with your account number and bank information. This information can be found on your check as well as on a deposit or withdrawal slip. Thus, you should only provide your bank and account information (whether over the phone, the Internet, or via some other method) to trusted third parties whom you have authorized to initiate these electronic fund transfers. Examples of these transfers include, but are not limited to:

- Preauthorized credits: You may make arrangements for certain direct deposits to be accepted into your checking or savings account(s).
- Preauthorized payments: You may make arrangements to pay certain recurring bills from your checking or savings account(s).
- Electronic check conversion: You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to pay for purchases or pay bills.
- Electronic returned check charge: You may authorize a merchant or other payee to initiate an electronic funds transfer to collect a charge in the event a check is returned for insufficient funds.

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to savings accounts.

FASTLINE Telephone Transfers—Types of Transfers: You may access your account by telephone 24 hours a day using your personal identification number, a touch tone phone, and your account number, to:

- Transfer funds from checking to checking
- Transfer funds from checking to savings
- Transfer funds from savings to checking
- Transfer funds from savings to savings
- Make payments from checking to loan accounts with us
- Make payments from savings to loan accounts with us
- Get information about
  - The account balance of checking account(s)
  - Deposits to checking accounts
  - Withdrawals from checking accounts
  - The account balance of savings account(s)
  - Deposits to savings accounts
  - Withdrawals from savings accounts

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to telephone transfers.

ATM Transfers—Types of Transfers and Dollar Limitations: You may access your account(s) by ATM using your ATM Card and personal identification number or Debit Card and personal identification number, to:

- Make deposits to checking account(s)
- Make deposits to savings account(s)
- Get cash withdrawals from checking account(s)
  - You may withdraw no more than $500.00 per day
- Get cash withdrawals from savings account(s)
  - You may withdraw no more than $500.00 per day
- Transfer funds from savings to checking account(s)
- Transfer funds from checking to savings account(s)
- Make payments from checking or savings account(s) to loan accounts with us
- Get information about
  - The account balance of your checking account(s)
  - The account balance of your savings account(s)

Some of these services may not be available at all terminals. Please also see Limitations on Frequency of Transfers section regarding limitations that apply to ATM transfers.

Types of ATM Card Point-of-Sale Transactions: You may access your checking or savings account(s) to purchase goods (in person), pay for services (in person), and get cash from a merchant, if the merchant permits, or from a participating financial institution.

Point-of-Sale Transactions—Dollar Limitations: Using your card:

- You may not exceed $500.00 in transactions per day, in combination with ATM withdrawals

Types of Debit Card Point-of-Sale Transactions: You may access your checking account(s) to purchase goods (in person, online, or by phone), pay for services (in person, online, or by phone), get cash from a merchant, if the merchant permits, or from a participating financial institution, and do anything that a participating merchant will accept.

Point-of-Sale Transactions—Dollar Limitations: Using your card:

- You may not exceed $200.00 in transactions per day (if your account has been opened for less than one year) or $1,000.00 per day (if your account has been opened for one year or more)

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to debit card transactions.

Currency Conversion and Cross-Border Transaction Fees: If you effect a transaction with your MasterCard®-branded Debit Card in a currency other than US Dollars, MasterCard will convert the charge into a US Dollar amount. The MasterCard currency conversion procedure includes use of either a government-mandated exchange rate, or a wholesale exchange rate selected by MasterCard. The exchange rate MasterCard uses will be a rate in effect on the day the transaction is processed. This rate may differ from the rate in effect on the date of purchase or the date the transaction was posted to your account.

MasterCard charges us a Currency Conversion Assessment of 20 basis points (.2% of the transaction) for performing the currency conversion. In addition, MasterCard charges us an Issuer Cross-Border Assessment of 80 basis points (.8% of the transaction) on all cross-border transactions regardless of whether there is a currency conversion. As a result, we charge you a Currency Conversion fee of .2% and a Cross-Border Transaction fee of .8%. The Cross-Border Transaction fee is charged on all cross-border transactions regardless of whether there is a currency conversion. A cross-border transaction is a transaction processed through the Global Clearing Management System or the MasterCard Debit Switch in which the country of the merchant is different than the country of the cardholder.

Advisory Against Illegal Use: You agree not to use your card(s) for illegal gambling or other illegal purpose. Display of a payment card logo by, for example, an online merchant does not necessarily mean that transactions are lawful in all jurisdictions in which the cardholder may be located. Please see your cardholder agreement for additional information relating to the use of your Debit Card.

Internet Banking Computer Transfers—Types of Transfers and Charges: You may access your account(s) by computer through the internet by logging onto our website at www.prosperitybanktx.com and using your user identification and your password, to:

- Transfer funds from checking to checking
- Transfer funds from checking to savings
- Transfer funds from savings to checking
- Transfer funds from savings to savings
- Make payments from checking to loan accounts with us
- Make payments from checking to third parties (Bill Pay)
  - Refer to the fee schedule in our separate Internet Banking Agreement for applicable charges
- Make payments from savings to loan account(s) with us
- Get information about
  - The account balance of checking account(s)
  - Deposits to checking accounts
  - Withdrawals from checking accounts
  - The account balance of savings account(s)
  - Deposits to savings accounts
  - Withdrawals from savings accounts
- View statements
- View check images

Please also see Limitations on Frequency of Transfers section regarding limitations that apply to computer transfers.

Limitations on Frequency of Transfers: In addition to those limitations on transfers elsewhere described, if any, the following limitations apply:

- Transfers from a money market account to another account or to third parties by check, draft, debit card, or similar order payable to third parties; or preauthorized, automatic, or telephone transfers to six (6) per monthly cycle
- Transfers from a savings account to another account or to third parties by check, draft, debit card, or similar order payable to third parties; or preauthorized, automatic, or telephone transfers to six (6) per monthly cycle

### Fees:

- We do not charge for direct deposits to any type of account.
- We do not charge for preauthorized payments from any type of account. Except as indicated elsewhere, we do not charge for these electronic fund transfers.

ATM Operator/Network Fees: When you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used (and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer).

### Documentation:

- Terminal transfers: You can get a receipt at the time you make a transfer to or from your account using an automated teller machine or point-of-sale terminal. However, you may not get a receipt if the amount of the transfer is $15 or less.
- Preauthorized credits: If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you can call us at (979) 578-8181 to find out whether or not the deposit has been made.

4

## YOUR ABILITY TO WITHDRAW FUNDS

al. funds from these deposits will be available on the second business day after the day of your deposit.

**Local Check.** The delay for check deposits other than those indicated above depends on if the check is a local check. To determine if a check is a local check, look at the routing number on the check. If the first four digits of the routing number are listed below, then the check is a local check.

0110, 0111, 0112, 0113, 0114, 0115, 0116, 0117, 0118, 0119, 0210, 0211, 0212, 0213, 0214, 0215, 0216, 0219, 0220, 0223, 0260, 0280, 0310, 0311, 0312, 0313, 0319, 0360, 0410, 0412, 0420, 0421, 0422, 0423, 0430, 0432, 0433, 0434, 0440, 0441, 0442, 0510, 0514, 0515, 0519, 0520, 0521, 0522, 0530, 0531, 0532, 0539, 0540, 0550, 0560, 0570, 0610, 0611, 0612, 0615, 0620, 0621, 0627, 0630, 0631, 0632, 0640, 0641, 0642, 0650, 0651, 0652, 0653, 0654, 0655, 0660, 0670, 0710, 0711, 0712, 0719, 0720, 0724, 0729, 0740, 0749, 0750, 0759, 0810, 0812, 0815, 0819, 0820, 0829, 0830, 0839, 0840, 0841, 0842, 0843, 0863, 0865, 0910, 0911, 0912, 0913, 0914, 0915, 0918, 0919, 0920, 0921, 0929, 0960, 1010, 1011, 1012, 1019, 1020, 1071, 1022, 1023, 1030, 1051, 1040, 1041, 1049, 1070, 1110, 1111, 1113, 1119, 1120, 1122, 1123, 1130, 1131, 1140, 1149, 1163, 1210, 1211, 1212, 1213, 1220, 1221, 1222, 1223, 1224, 1230, 1231, 1232, 1233, 1240, 1241, 1242, 1243, 1250, 1251, 1252, 2110, 2111, 2112, 2113, 2114, 2115, 2116, 2117, 2118, 2119, 2210, 2211, 2212, 2213, 2214, 2215, 2216, 2219, 2220, 2223, 2260, 2280, 2310, 2311, 2312, 2313, 2319, 2360, 2410, 2412, 2420, 2421, 2422, 2423, 2430, 2432, 2433, 2434, 2440, 2441, 2447, 2510, 2514, 2515, 2519, 2520, 2521, 2522, 2530, 2531, 2532, 2539, 2560, 2550, 2560, 2570, 2610, 2611, 2612, 2613, 2620, 2627, 2630, 2651, 2652, 2660, 2641, 2642, 2650, 2651, 2652, 2653, 2654, 2655, 2660, 2670, 2710, 2711, 2712, 2719, 2720, 2724, 2730, 2739, 2740, 2749, 2750, 2759, 2810, 2812, 2815, 2819, 2820, 2829, 2830, 2830, 2840, 2841, 2842, 2843, 2863, 2865, 2910, 2911, 2912, 2913, 2914, 2915, 2919, 2920, 2971, 2929, 2960, 3010, 3011, 3012, 3019, 3090, 3071, 3022, 3023, 3030, 3031, 3039, 3040, 3041, 3049, 3070, 3110, 3111, 3113, 3119, 3120, 3122, 3123, 3130, 3131, 3140, 3149, 3163, 3110, 3111, 3212, 3213, 3220, 3221, 3222, 3223, 3224, 3230, 3231, 3232, 3233, 3240, 3241, 3242, 3243, 3250, 3251, 3252

Some checks are marked "payable through" and have a four-or nine-digit number nearby. For these checks, use the four-digit number (at the first four digits of the nine-digit number) not the routing number on the bottom of the check, to determine if these checks are local.

The first $100.00 from a deposit of local checks will be available on the first business day after the banking day of deposit. The remaining funds will be available on the second business day after the day of your deposit.

For example, if you deposit a local check of $700.00 on a Monday, $100.00 of the deposit is available on Tuesday. The remaining $600.00 is available on Wednesday.

**Holds on Other Funds for Check Cashing.** If we cash a check for you that is drawn on another financial institution, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds will be available at the time funds from the check we cashed would have been available if you had deposited it.

**Holds on Other Funds in Another Account.** If we accept for deposit a check that is drawn on another financial institution, we may make funds from the deposit available for withdrawal immediately but delay your availability to withdraw a corresponding amount of funds that you have on deposit in another account with us. The funds in the other account would then not be available for withdrawal until the time periods that are described elsewhere in this disclosure for the type of check that you deposited.

**Longer Delays May Apply.** Funds you deposit by check may be delayed for a longer period under the following circumstances: (a) if we believe a check you deposit will not be paid; (b) if you deposit checks totaling more than $5,000 on any one day; (c) if you redeposit a check that has been returned unpaid; (d) if you have overdrawn your account repeatedly in the last six months; or (e) if an emergency condition arises that would not enable us to make the funds available to you, such as the failure of computer or communications equipment.

We will notify you if we delay your availability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the seventh business day after the day of your deposit.

**Special Rules for New Accounts.** If you are a new customer, the following special rules will apply during the first 30 days your account is opened.

Funds from electronic direct deposits to your account will be available on the day we receive the deposit. Funds from deposits of cash, wire transfers, and the first $5,000 of a day's total deposits of

cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of deposit if the deposit meets certain conditions. For example, the checks must be payable to you (and you may have to use a special deposit slip). The excess over $5,000 will be available on the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of deposit.

Funds from all other check deposits will be available on the seventh business day after the day of your deposit.

**Deposits at Automated Teller Machines.** We may allow deposits to be made at ATMs that we own or operate. All ATMs that we own or operate are identified as our machines.

## SUBSTITUTE CHECKS AND YOUR RIGHTS

As our customer we think it's important for you to know about substitute checks. The following Substitute Check Disclosure provides information about substitute checks and your rights.

**What is a substitute check?** To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other law with respect to those transactions.

**What are my rights regarding substitute checks?** In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest-bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

**How do I make a claim for a refund?** If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, please contact us at:

Prosperity Bank
1301 N. Mechanic St.
El Campo, TX 77437
(979) 578-8181

You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include —

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check or the following information to help us identify the substitute check: the check number, the amount of the check, the date of the check, and the name of the person to whom you wrote the check.

1716218-020
©2000 Wolters Kluwer Financial Services — Bankers Systems™
Form AEB-P 5/8/2001 TCM-53q.9a 3m, Custom Law

## BANKING CENTERS

### HOUSTON AREA

**Allen Parkway**
1727 Allen Pkwy
Ste PL01
Houston, TX 77019
713-522-7881

**Beltway**
9555 W. Sam Houston
Pkwy
Houston, TX 77064
281-970-9636

**Champions/Gladebrook**
4203 FM 1960 W. #100
Houston, TX 77068
281-902-1700

**Cinco Ranch**
23501 Cinco Ranch
Blvd. K100
Katy, TX 77494
281-391-2310

**First Colony/Sugar Land**
1735 Lake Pointe Pkwy
Sugar Land, TX 77478
281-902-1750

**Northside**
2401 N. Main
Houston, TX 77009
713-226-5300

**Piney Point**
8820 Westheimer
Houston, TX 77063
713-954-2418

**Post Oak/Uptown**
777 Post Oak Blvd #150
Houston, TX 77056
281-902-1630

**Royal Oaks**
12000 Westheimer Rd.
#100
Houston, TX 77077
281-940-0170

**Shadow Creek Ranch**
11451 Broadway
Pearland, TX 77584
713-340-0652

**West University**
4065 Bellaire Blvd.
Houston, TX 77025
281-902-1650

### DALLAS AREA

**Abrams Centre**
11919 Abrams Rd.
Dallas, TX 75243
214-342-5200

**East Renner**
4251 E. Renner Rd.
#100
Richardson, TX 75082
972-907-1222

**Independence**
8901 Independence
Pkwy
Plano, TX 75025
972-377-7380

**McKinney**
321 N. Central Expy
McKinney, TX 75070
972-548-4000

**McKinney-Stonebridge**
6200 W. Eldorado Pkwy
McKinney, TX 75070
972-548-1367

**Midway**
2012 Midway Rd.
Plano, TX 75093
972-473-9000

**Preston Forest**
5919 Forest Lane
Dallas, TX 75230
972-661-0399

**Sachse**
6600 Murphy Rd.
Sachse, TX 75048
972-530-7999

For a complete list of locations throughout Texas, please visit us on the web:
www.prosperitybanktx.com/locations.aspx